UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

CALIFORNIA STATE OUTDOOR
ADVERTISING ASSOCIATION, INC.,
a California corporation, et
al.,

       NO. CIV. S-05-0599 FCD/DAD

     Plaintiffs,

   v.              <u>MEMORANDUM AND ORDER</u>

STATE OF CALIFORNIA,
DEPARTMENT OF TRANSPORTATION,
WILL KEMPTON, in his official
capacity as Director,
CALIFORNIA DEPARTMENT OF
TRANSPORTATION, and DOES 1-50
inclusive,

     Defendants.

_____/

----oo0oo----

    This matter is before the court on motion for partial

summary judgment filed by defendants State of California

Department of Transportation and Will Kempton, Director of the

California Department of Transportation (collectively

"Caltrans"), and motion for partial summary judgment filed by

1

1  plaintiffs, California Outdoor Advertising Association, Inc., and
2  its members, Arcturus Outdoor Advertising, Bulletin Displays,
3  LLC, Clear Channel Outdoor, Inc., Fairway Outdoor Advertising,
4  Inc., Edwards Outdoor Signs, General Outdoor Advertising, Inc.,
5  Heywood Company Outdoor, James N. Hoff doing business as Hoff
6  Outdoor Advertising, Hunter Media, Lamar Central Outdoor, Inc.,
7  J. R. Zukin Corporation doing business as Meadow Outdoor
8  Advertising, Sun Outdoor Advertising, Stott Outdoor Advertising,
9  Titan Advertising, United Outdoor Advertising, Van Wagner
10 Communications, Inc., and Viacom Outdoor, Inc. (collectively
11 "CSOAA").  The court held a hearing on the motions August 26,
12 2005.[1],[2]

    After considering the memoranda filed by the parties and
arguments made by counsel at the hearing, and for the reasons
stated herein, the court GRANTS plaintiff's motion for summary
judgment and DENIES defendants motion for summary judgment.

**BACKGROUND**

    Caltrans, a department of the State of California, regulates
outdoor advertising pursuant to the Outdoor Advertising Act,
California Business & Professions Code § 5200 et seq. ("OAA") and
regulations promulgated by Caltrans pursuant to the OAA.  (Defs.'
Response to Pls.' Sep. Statement of Und. Facts ("RUF") ¶ 5.)

---

[1]    Because oral argument will not be of material
assistance, the court orders the matter submitted on the briefs.
E.D. Cal. Local Rule 78-230.

[2]    The court strikes from the record the Surreply and
objections to certain declarations submitted by defendants
(docket numbers 28 and 29) filed by plaintiffs on August 22, 2005
as improper and untimely under the Eastern District Local Rule
78-230.

The OAA requires that any person operating an outdoor advertising display in California referred to herein as "sign" or "billboard") obtain a permit ("Billboard permit") issued by the director of Caltrans or his authorized agent, which must be renewed every five years.  Cal Bus. & Prof. Code §§ 5350, 5360(a); RUF ¶ 7.  Prior to January 1, 2003, the fee for obtaining a Billboard permit was set by statute, California Business and Professions Code section 5485(a), at $20.00 per year for each billboard.  (RUF ¶ 8.)   Under regulations effective in 2002, billboard operators were required to pay the annual $20.00 permit fee for 2003 on or before December 31, 2002.  (RUF ¶ 10.)

Effective January 1, 2003, the Legislature amended section 5485(a), which now provides that the Director of Caltrans shall set the Billboard permit fee:

> (a)(1) The annual permit fee for each advertising display shall be set by the director.
> (2) The fee shall not exceed the amount reasonably necessary to recover the cost of providing the service or enforcing the regulations for which the fee is charged, but in no event shall the fee exceed one hundred dollars ($100). This maximum fee shall be increased in the 2007-08 fiscal year and in the 2012-13 fiscal year by an amount equal to the increase in the California Consumer Price Index.
> (3) The fee may reflect the department's average cost, including the indirect costs, of providing the service or enforcing the regulations.

Cal. Bus. & Prof. Code § 5485(a).

On or about June 2, 2003, Caltrans announced a new annual permit renewal fee of $92.00, which Caltrans indicated it promulgated pursuant to newly-amended section 5485(a).  At or around the same time, Caltrans notified permit holders that they

3

1  were required to pay within thirty days[3] an additional $72.00 per

2  billboard for their 2003 permits or the permits would be revoked

3  pursuant to California Business and Professions Code § 5463 .[4]

4  (RUF ¶ 11.)

5      In setting the new Billboard permit fee, Caltrans did not

6  follow the rulemaking provisions of the Administrative Procedures

7  Act, California Government Code section 11340, et seq. ("APA").

8  According to Caltrans, setting of the Billboard permit fee falls

9  within an exception to the APA for "regulations establishing

10 rates, prices or tariffs."  Cal. Gov't Code § 11340.9(g); RUF ¶¶

11 8.)

12     Instead, Caltrans calculated the new Billboard permit fee by

13     "taking the total costs of its Outdoor Advertising
       Program ("ODA") of $1,273,824.00 minus projected
14     revenues of $190,000.00 to give an annual net program
       cost of $1,083.824.00.  This net costs was divided by
15     the number of permits, 11850, to give an annual permit
       cost of $92.00.  The breakdown of costs and revenues in
16     arriving at the $92 permit fee are provided in the ODA
       Expenditure Summary Data Sheet and related documents."
17 (RUF ¶ 19; Caltrans' response to CSOAA's Interrogatory No. 1.)

18     Plaintiffs filed their original complaint with the Los

19

20

21

22     [3]    According to Caltrans, it extended the thirty-day
23 period to sixty days on July 17, 2003.

24     [4]    California Business and Professions Code § 5463
   provides in relevant part: "The director may revoke any license
25 or permit for the failure to comply with this chapter and may
   remove and destroy any advertising display placed or maintained
26 in violation of this chapter after 30 days written notice is
   forwarded by mail to the permitholder at his or her last known
27 address. If no permit has been issued, a copy of the notice shall
   be forwarded by mail to the display owner, property owner, or
28 advertiser at his or her last known address."

4

Angeles County Superior Court.[5]  On November 29, 2004, plaintiffs
filed a First Amended Complaint asserting four claims: (1)
violation of the APA; (2) violation of California Business and
Professions code section 5485(a); (3) violation of Article I,
§2(a) of the California Constitution protecting liberty of
speech; and (4) against defendant Kempton only, a claim under 42
U.S.C. § 1983 for violation of plaintiff's First Amendment
rights.

     On January 5, 2005, defendants removed the action to the
United States District Court for the Central District of
California.  Defendants subsequently filed a motion for change of
venue which was granted by order dated March 14, 2005.  The case
was transferred to this court on March 24, 2005.

     On June 7, 2005 defendants filed a motion for partial
summary judgment on plaintiffs' first claim for violation of the
APA.  On July 12, 2005 plaintiffs filed a cross motion for
partial summary judgment as to the validity of the permit fee.

                            **STANDARD**

     Pursuant to Rule 56 of the Federal Rules of Civil Procedure,
summary judgment is appropriate when "there is no genuine issue
as to any material fact and . . . the moving party is entitled to
judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Under this
standard, an issue is "genuine" if there is sufficient evidence
for a reasonable jury to find for the nonmoving party and a fact
is "material" when it may affect the outcome of the case under
the substantive law that provides the claim or defense.  Anderson

_____

     [5]     The court cannot locate in the file the date plaintiffs
filed the original complaint.

                                5

1  v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  The

2  determination is made based solely upon admissible evidence.  Orr

3  v. Bank of America, 285 F.3d 764, 773 (9th Cir. 2002).

4  Furthermore, the court must view inferences made from the

5  underlying facts in the light most favorable to the nonmoving

6  party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).

7      The moving party has the initial burden to demonstrate the

8  absence of a genuine issue of material fact.  Celotex Corp. v.

9  Catrett, 477 U.S. 317, 323 (1986).  If the moving party is

10 without the ultimate burden of persuasion at trial, it may either

11 produce evidence negating an essential element of the opposing

12 party's claim, or demonstrate that the nonmoving party does not

13 have enough evidence to carry its ultimate burden of persuasion

14 at trial.  Nissan Fire & Marine Insurance Co. v. Fritz Companies,

15 Inc., 210 F.3d 1099, 1106 (9th Cir. 2000).  If the moving party

16 meets this initial requirement, the burden then shifts to the

17 opposing party to go beyond the pleadings and set forth specific

18 facts that establish a genuine issue of material fact remains for

19 trial.  Matsushita Elec. Indust. Co. v. Zenith Radio Corp., 475

20 U.S. 574, 585-87 (1986).  Summary judgment should not be granted

21 where "there are any genuine factual issues that properly can be

22 resolved only by a finder of fact because they may reasonably be

23 resolved in favor of either party."  Anderson, 477 U.S. at 250.

24     Following this same rubric, a court may grant summary

25 adjudication on part of a claim or defense, based on the

26 standards applicable to a motion for summary judgment.  See Fed.

27 R. Civ. P. 56(a),(b); State of California v. Campbell, 138 F.3d

28 772, 780 (9th Cir. 1998).

6

**ANALYSIS**

**I.   Violation of the APA**

The sole question presented here is whether Caltrans was required to adhere to the procedural requirements of APA in setting the Billboard permit fee.[6]  According to Caltrans, the APA's exemption for "regulations establishing rates, prices or tariffs" applies to the setting the Billboard permit fee.  See Cal. Gov't Code § 11340.9(g).  Plaintiffs dispute that the "rates, prices or tariffs" exception applies to the Billboard permit fee.

"The task of resolving the dispute over the meaning of [a statute] begins where all such inquiries must begin:  with the language of the statute itself." United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989); Chevron U.S.A. v. Natural Res. Def. Council, 467 U.S. 837, 842-43 (1984).  The Supreme Court describes this rule as the "one, cardinal canon before all others." Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253 (1992).  Thus, "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." Id. (citing, Ron Pair, 489 U.S. at 241-242; United States v. Goldenberg, 168 U.S. 95, 102-03 (1897).  When the language of the statute is plain, the inquiry also ends with the language of the statute, for in such instances "the sole function of the courts is to enforce [the statute] according to its terms." Ron Pair, 489 U.S. at 241 (quoting Caminetti v. United States, 242 U.S. 470, 485 (1917)); Melahn v. Pennock Ins., Inc.,

---

[6]   Parties do not dispute that the permit fee is a "regulation" within the meaning of the APA.

965 F.2d 1497, 1502 (8th Cir. 1992) (plain meaning of a statute governs over ambiguous legislative history).

California Government Code section 11340.9(g) provides:[7]

> This chapter does not apply to any of the following:
> . . .
>
> (g) A regulation that establishes or fixes rates, prices, or tariffs. . . .

Initially, the court notes that the word "fee" is not used in the statute. Under the canon of construction, *expressio unius est exclusio alterius*, the mention of one thing in a statute impliedly excludes another. By including a list of exceptions for "rates", "prices" and "tariffs," the legislature implicitly excluded fees.

---

[7] The other exceptions contained in section 11340.9 are:
(a) An agency in the judicial or legislative branch of the state government.
(b) A legal ruling of counsel issued by the Franchise Tax Board or State Board of Equalization.
(c) A form prescribed by a state agency or any instructions relating to the use of the form, but this provision is not a limitation on any requirement that a regulation be adopted pursuant to this chapter when one is needed to implement the law under which the form is issued.
(d) A regulation that relates only to the internal management of the state agency.
(e) A regulation that establishes criteria or guidelines to be used by the staff of an agency in performing an audit, investigation, examination, [etc., which would disclose material to the violator and facilitate violation of the law].
(f) A regulation that embodies the only legally tenable interpretation of a provision of law.
(h) A regulation that relates to the use of public works, including streets and highways, when the effect of the regulation is indicated to the public by means of signs or signals or when the regulation determines uniform standards and specifications for official traffic control devices pursuant to Section 21400 of the Vehicle Code.
(I) A regulation that is directed to a specifically named person or to a group of persons and does not apply generally throughout the state.

The term "fee" is used extensively throughout the California code.   In light of this ubiquitous term, it seems likely that the legislature would have expressly referenced "fees" within this statute had it intended the exemption to apply to fees.[8] Interestingly, in other statutes, the legislature did include both the terms "fees" and "rates", indicating that, when it intended to include fees, it the legislature expressly so provided.   See e.g., Cal. Gov't Code § 6557 ("Said indenture may include covenants or other provisions relating to the bonds issued thereunder requiring the entity to fix, prescribe and collect *rates*, tolls, *fees*, rentals or other charges . . .")(emphasis added);   Cal. Educ. Code § 94147 ("The authority may fix, revise, charge, and collect *rates*, rents, *fees*, and charges for the use of and for the services furnished or to be furnished by each project . . ..")(emphasis added).

Nor does the court agree with defendants' argument that the terms "fee" and "rate," or alternatively "fee" and "price" are synonymous.   The common meanings of these terms are quite distinct.

Black's law dictionary defines "rate" as "proportional or relative value, measure or degree.   The proportion or standard by which quantity or value is adjusted.. . . Amount of charge or

---

[8]      In fact, the term "fee" appears in the same 1945 statute (different section) that added the "rate or tariffs" exception to the APA.   See Stats. 1945 c. 111 p. 445; Guarantee Title & Trust Co. v. Title Guaranty & Surety Co., 224 U.S. 152, 159-160 (1912)(where different language is used in different parts of a statute, it is presumed that the language is used with a different intent); see also 73 Am. Jur. 2d Statutes § 131 (May, 2005).

payment with reference to some basis of calculation.  A certain
quantity or amount of on thing considered in relation to another
thing and used as standard or measure."  Black's Law Dictionary
at 1261 (Sixth Ed. 1990).

By contrast, a "fee" is defined as "a charge fixed by law
for services of public officers or for use of a privilege under
control of government."  Black's Law Dictionary at 614.  Unlike a
rate, which is measured by reference to something else, a "fee"
has a fixed value.  A fee is $20.00.  A rate is $20.00 per hour
or $30.00 per pound.  A fee can be set by reference to a rate,
but is not synonymous with the term rate.

Similarly, "fee" and "price" are not synonymous.[9]  Price is
defined as "the cost at which something is obtained.  Something
which one ordinarily accepts voluntarily in exchange for
something else.  The consideration given for the purchase of a
thing.  Amount which a prospective seller indicates as the sum
for which he is willing to sell . . . The term may be synonymous
with cost and with value as well as with consideration, though
prices is not always identical either with consideration."
Black's Law Dictionary at 1188-89.

Unlike "fee", which refers to the charge for a government
privilege, i.e., a permit or license, "price" connotes a sale,
purchase or commercial transaction.  This connotation is apparent
in the references to price setting in the code.  See e.g., Cal.
Food & Agric. Code § 62062 (authorizing Director of Department of
Agriculture to set minimum milk prices);  Cal. Educ. Code §

---

[9]    Defendants do not contend that the permit fee falls
under the exception for "tariffs".

10

1249(a) ("The county superintendent of schools may sell
publications that he or she produces.. . . The county
superintendent of schools, . . . may fix the price . . . for the
sale of any publication produced by him or her."); Cal. Fish & G.
Code § 15301 ("The department may sell wild aquatic plants or
animals, except rare, endangered, or fully protected species, for
aquaculture use at a price approximating the administrative cost
to the department for the collection or sale of the plants or
animals. The commission shall set this price."); Cal. Gov. Code §
9792 (authorizing Department of General Services to sell copies
of laws, resolutions and journals "at such price as it may fix").

        The court thus concludes that the plain meaning of the
language in California Government Code section 11340.9(g)
excludes fees from the exception.  However, even if the language
were ambiguous, the legislative history further supports the
conclusion that the exception does not cover fees.  When added to
former Government code section 11380 in 1945, the exception
listed only "rates or tariffs."[10]  See Stats. 1945 c. 111 p. 445
§ 3 ("As used in this chapter: . . . (b) 'Regulation' includes
any rule or regulation made by any state agency except one which:
(2) establishes or fixes rates or tariffs.").  In 1949, the
legislature added the term "prices" to the section 11380,
presumably because the terms "rates" and "tariffs" have unique
definitions which do not encompass "prices".  See Stats. 1949 c.

_____

        [10]    The earlier versions of this provision, originally
codified as Government Code section 11380, provide no definition
of the terms "rates," "prices" or "tariffs", nor did a search of
archival documents reveal any explication of the terms or
discussion of the purpose of the 1949 amendment.  See Stats. 1949
c. 313 § 2 p. 601.

313 § 2 p. 601.  If the legislature felt compelled to add the
word "prices" because "prices" were not encompassed within the
terms "rates" and "tariffs," logic suggests that the terms
"rates" and "tariffs" also do not encompass other different
terms, such as "fees".

     The court also notes that Caltrans has followed the
Administrative Procedures Act when promulgating regulations
establishing permit fees in other contexts.[11]  plaintiff cites
two examples where Caltrans itself followed the APA in setting
fees.  See 4 C.C.R. § 2424 (describing late renewal process and
setting penalty fees); 21 C.C.R. § 2114 (establishing permit fees
and other fees for placement of business names on roadside signs
placed in rural areas to alert motorists to nearby services).
In addition, plaintiffs identify numerous examples where other
agencies established fees in conformity with the APA.  See e.g.,
2 C.C.R. § 2202(c)(2)($1.00 per acre permit fee for prospecting);
10 C.C.R. § 2604.02(B) ($35.00 application fee for pre-
organization permit to organize insurance company; 10 C.C.R. §
225 (fees relating to real estate appraisers); 14 C.C.R. § 13055
(fees for processing permit applications for approval by coastal

_____

     [11]    Caltrans and other agencies' conduct in setting other
fees is of little relevance to the court's interpretation of the
statute.  From the materials provided by the parties, the court
cannot conclude that agencies consistently establish fees in
compliance with the APA.  However, the court includes reference
to the above cited examples to demonstrate an apparent
inconsistency between Caltrans' position that fees fall within
section 11340.9(g) exception and its own conduct in setting other
fees in compliance with the APA, and also to defeat any
suggestion that requiring agencies to comply with the APA in
setting fees would place an undue burden on agencies, since it
appears that at least in some instances agencies do comply with
the APA in setting fees.

                              12

1  commission); 12 C.C.R. § 676(b)(9)(B)($200.00 permit fee fore

2  fallow deer farming).[12]

3      Defendant distinguishes these regulations on the ground

4  that, unlike here, where the regulation involved solely the

5  setting of a fee with statutory guidance provided by the

6  legislature, these permit fees were part of a broader regulation

7  adopting a process.  However, defendants' argument ignores the

8  statutory requirement that Caltrans adopt regulations

9  establishing the *process* for permit renewal.  California Business

10  and Professions Code section 5630 provides:

11      (a) The director shall establish a permit renewal term
       of five years, which shall be reflected on the face of
12      the permit.  (b) The director shall adopt regulations
       for permit renewal that include procedures for late
13      renewal within a period not to exceed one year from the
       date of permit expiration. Any permit that was not
14      renewed after January 1, 1993, is deemed revoked.

15      Pursuant to that authority, Caltrans promulgated 4 C.C.R. §

16  2424, which sets forth the process for permit renewal and payment

17  of the fee.  While the statutory authority for setting the

18  Billboard permit fee appears in a different code section, it is

19  nonetheless part of a broader permit renewal process.  Thus, it

20  is indistinguishable from the other permit fees cited by

21  plaintiff.

22      In support of its position that the permit fee falls within

23  the "rates, prices and tariffs" exception, defendants rely on a

24  1961 California Court of Appeals case, Estate of Setzer, 192 Cal.

25  App. 2d 634 (1961).  Neither Setzer, nor any other reported case

26  addresses whether "fees" fall within the "rates, prices or

27

28      [12]    The court grants plaintiffs' request for judicial
   notice of the regulations cited.

13

tariffs" exception.[13]  Setzer involved a challenge to rates fixed

by the Director of Mental Hygiene for the maintenance of

incompetent individuals in state hospitals.  The conservator for

an individual committed to a state hospital challenged the

Director's increase in the rates for failure to comply with the

APA.  The district court upheld the rate increase and the

appellate court affirmed, holding that:

> "the rate determinations made by the director were not
> required to be filed with the secretary of State nor
> published in the California Administrative Code or
> Register since they come within the provisions of
> [former version of section 11340.9(g)], which excepts
> from such filing any regulation establishing or fixing
> rates, prices or tariffs."

Id. at 686.  Setzer is distinguishable.  First, Setzer involved

fixing *rates*, which expressly falls within the ambit of section

11340.9(g).[14]  Moreover, the type of charge involved was a rate

---

[13]   See California Ass'n of Nursing Homes, Sanitariums,
Rest Homes for Aged, Inc. v. Williams, 4 Cal. App. 3d 800 (1970)
(concluding that regulation establishing reimbursement rates for
MediCal patients in nursing homes did not fall within "rates,
prices or tariffs" exception even though it set "rates" because
in the authorizing statutes, the scope of the agency's
regulations was broader than the exemption); State Compensation
Ins. Fund v. McConnell, 46 Cal. 2d  330 (1956)(rating plan for
workers' compensation insurance premium fixed by insurance
commissioner fell within "rates, prices and tariffs" exception to
the APA); Winzler & Kelly v. Department of Industrial Relations,
121 Cal. App. 3d 120, 128 (1981) (determination that field
surveyors were covered by wage and hour laws was integral to
wage rate-setting and thus exempt from the APA as a regulation
fixing rates, prices or tariffs).

[14]   Defendants also rely on two opinions by the California
Attorney General, 66 Ops. Cal. Atty.  Gen. 505 (1983).  That
opinion held that the Department of Developmental Services could
establish a "parental fee schedule" for services provided to
developmentally disabled children without complying with the APA.
However, the court disagrees with the Attorney General's
conclusion that "there appears little doubt but that a parental
fee schedule sets 'rates' in common parlance." 66 Ops. Cal. Atty.
(continued...)

charged for a *service*, i.e., maintenance of the committed person
at the mental hospital.  Here, the fee does is not charged for a
service but for a government privilege, i.e., the right to erect
a billboard along a highway.  It did not involve a regulatory
permit.

Finally, defendants argue that the language of California
Business and Professions Code section 5485 reveals legislative
intent to exempt the fee setting from the APA.  Specifically
defendants note that the statute itself establishes a "process"
by setting a maximum fee of $100.00, limiting the fee to the
reasonably necessary to recover the cost of providing the service
or enforcing the regulations for which the fee is charged, and
providing that the fee can include indirect costs of
administering the program.  See Cal. Bus. & Prof. Code § 5485.
The court disagrees that the statutory language can be
interpreted to indicate legislative intent to exempt the fee
setting from the APA.   The APA applies broadly to agency
regulations.  <u>Tidewater Marine Western, Inc. v. Bradshaw</u>, 14
Cal.4th 557, 570 (1996).  Specifically the APA provides that

> [n]o state agency shall issue, utilize, enforce, or
> attempt to enforce any guideline, criterion, bulletin,
> manual, instruction, order, standard of general
> application, or other rule, which is a regulation ...,
> unless the guideline, criterion, bulletin, manual,
> instruction, order, standard of general application, or
> other rule has been adopted as a regulation and filed

---

[14] (...continued)
Gen. 505.  Moreover, the Attorney General's opinion is
distinguishable in that, like <u>Setzer</u>, it involved a government
service, specifically, services for developmentally disabled
children, and not a regulatory permit.     66 67 Ops. Cal. Atty.
Gen. 50.

1   with the Secretary of State pursuant to this chapter.

2   Cal Gov't Code, § 11340.5(a).  Moreover, the APA provides that

3   its provisions "shall not be superseded or modified by any

4   subsequent legislation except to the extent that the legislation

5   shall do so expressly."  Cal. Gov't Code, § 11346.  The

6   limitations on the permit fee contained in section 5485 do not

7   constitute an express exemption from the APA.[15]  Thus, the APA

8   applies.

9                               **CONCLUSION**

10      For the foregoing reasons, plaintiffs' motion for partial

11  summary judgment is granted and defendants' motion for partial

12  summary judgment is denied.

13          IT IS SO ORDERED.

14  DATED: August 29, 2005

15                          /s/ Frank C. Damrell Jr.
                            FRANK C. DAMRELL, Jr.
16                          UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23      [15]    In Alta Bates Hospital v. Lackner, 118 Cal. App. 3d
    614, the appellate court confronted a challenge to a 10% cutback
24  in MediCal reimbursement rates instituted by the director of the
    Department of Health Services.  The cutback was instituted
25  pursuant to a state statute authorizing the director to make
    emergency cutbacks when it appeared that there would be a budget
26  shortfall.  See Cal. Welf. & Inst. Code § 14120.  The court
    determined that the legislature did not intend for the director
27  to comply with the APA because the cutback would be implemented
    only in specific, emergency situations, and the delay attendant
28  to complying with the APA would undermine the efficacy of the
    statute.   No parallel exigency is present here.

                                16