Michael F. Wright (Bar No. 89910)
Armen Tamzarian (Bar No. 180778)
CASE, KNOWLSON, JORDAN & WRIGHT LLP
2029 Century Park East, Suite 2500
Los Angeles, California 90067
Telephone: (310) 552-2766
Facsimile: (310) 552-3229

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA STATE OUTDOOR ADVERTISING ASSOCIATION, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> STATE OF CALIFORNIA, et al., <br><br> Defendants. | Case No.: 2:05-CV-00599-FCD-DAD <br><br> MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT <br><br> Date: December 16, 2005 <br> Time: 10: 00 a.m. <br> Place: Courtroom 2 <br> The Hon. Frank C. Damrell |

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

# TABLE OF CONTENTS

                                                                                                  **Page**

I. INTRODUCTION ................................................................................................ 1

II. STATEMENT OF FACTS .................................................................................. 2

    A. Procedural Position of the Case .................................................................. 2

    B. The Fee Requirement and the Former $20 Renewal Fee ........................ 3

    C. Caltrans' Coercive Imposition of the $92 Fee ......................................... 4

    D. Plaintiffs' Payment of the Fee .................................................................. 5

III. PLAINTIFFS ARE ENTITLED TO A DECLARATORY
       JUDGMENT THAT THE FEE IS VOID ...................................................... 6

IV. THE COURT SHOULD ENJOIN DEFENDANTS FROM TAKING
       ANY ACTION TO ENFORCE THE FEE .................................................... 6

V. THE COURT SHOULD ORDER DEFENDANTS TO REFUND
      TO PLAINTIFFS $1,662,912 IN UNLAWFULLY COLLECTED
      PERMIT RENEWAL FEES, PLUS $205,684.11 IN INTEREST ................ 8

    A. Plaintiffs Are Entitled to a Refund of the Fees Under State
        Law ............................................................................................................ 8

    B. Due Process Requires that Caltrans Refund the Unlawful
        Fees It Collected From Plaintiffs ........................................................... 10

    C. Plaintiffs Will Voluntarily Reduce Their Monetary Recovery
        by the Amount of the Prior $20 Renewal Fee ...................................... 14

    D. Heywood Company's Monetary Claims ................................................. 16

VII. CONCLUSION ................................................................................................ 17

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

## FEDERAL CASES

Page

AAK v. City of Woonsocket
    830 F. Supp. 99, 105 (D.R.I. 1993) .............................................................. 13

Atchison, Topeka & Santa Fe Railway Co. v. O'Connor
    223 U.S. 280, 285-286, 32 S. Ct. 216 (1912) ........................................... 11

Bayside Enterprises, Inc. v. Carson
    450 F. Supp. 696, 705 (M.D. Fla. 1978) ........................................ 13

Christopher v. Harbury
    536 U.S. 403, 417, 122 S. Ct. 2179, 2188 (1992) ............................................. 3

Eastern Connecticut Citizens Action Group v. Powers
    723 F. 2d 1050, 1056 (2nd Cir. 1983) ........................................... 13

Fly Fish, Inc. v. City of Cocoa Beach
    337 F. 3d 1301, 1314, 1315 (11th Cir. 2003) .................................... 13

Freeman v. Package Machinery Co.
    865 F. 2d 1331, 1345 (5th Cir. 1988) ........................................... 15

Hillery v. Rushen
    720 F. 2d 1132, 1139 (9th Cir. 1983) .......................................... 7

Keith v. Volpe
    118 F. 3d 1386, 1392 (9th Cir. 1997) .......................................... 3

Lund v. Albrecht
    936 F. 2d 459, 465 (9th Cir. 1991) ........................................... 15

McKesson Corporation v. Division of Alcoholic Beverages
and Tobacco, Etc.,
    496 U.S. 18, 31, 110 S. Ct. 2238 (1990) ..................................... 10, 11, 13, 14

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Moffatt v. Killian
     360 F. Supp. 228, 232 (D. Conn. 1973) ........................................................ 13

Oklahoma Operating Co. v. Love
     252 U.S. 331, 337-338, 40 S. Ct. 338 (1920) ................................................. 10

Pacific-Southern Mort. Trust Co. v. Ins. Co.
of North America
     166 Cal. App. 3d 703, 716, 212 Cal.Rptr. 754 (1985) ................................. 15

Parents Involved in Community Schools v. Seattle School Dist. No. 1
     294 F.3d 1085, 1092 (9th Cir. 2002) .............................................................. 3

Ward v. Love County
     253 U.S. 17, 40 S. Ct. 419 (1920) .................................................. 11, 12, 13, 14

Wendling v. City of Duluth
     495 F. Supp. 1380, 1385 (D. Minn. 1980) .................................................... 13

**CALIFORNIA CASES**

Flynn v. City and County of San Francisco
18 Cal. 2d 210, 217, 115 P. 2d 3 (1941) ...................................................... 8

Jordan v. Department of Motor Vehicles
     75 Cal. App. 4th 449, 466, 89 Cal. Rptr. 2d 333 (1999) ................................ 9

Kings Rehabilitation Center, Inc. v. Premo
     69 Cal. App. 4th 215, 217, 81 Cal. Rptr. 2d 406, 407 (1999) ........................ 6

People v. Alexander
     178 Cal. App. 3d 1250 1259 n. 13, 224 Cal. Rptr. 290, 296 (1986) ............ 14

Spears v. County of Modoc
     101 Cal. 303, 305, 35 P. 869 (1894) ............................................................ 14

Sperry & Hutchinson Co. v. California State Board of Pharmacy
     241 Cal. App. 2d  229, 50 Cal. Rptr. 489 (1966) ......................................... 7

Tidewater Marine Western, Inc. v. Bradshaw
　　　14 Cal. 4th 557, 572, 59 Cal. Rptr. 186, 195(1996) .......................................... 6

Vitale v. City of Los Angeles
　　　13 Cal. App. 2d 704, 706-707, 57 P. 2d 993 (1936) ....................................... 9

Whyte v. State
　　　110 Cal. App. 314, 294 P. 417 (1931) ............................................................ 9

## OTHER CASES

Ves Carpenter Contractors, Inc. v. City of Diana
　　　422 So. 2d 342 (Fla. App. 1982) .................................................................... 13

## FEDERAL STATUTES

### Constitution

First Amendment.......................................................................................................2

## CALIFORNIA STATUTES

### Constitution

Article I, § 2 of the California Constitution ............................................................ 15
Article XV, § 1 of the California Constitution........................................................ 15
Penal Code § 19........................................................................................................5

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

## Business & Professions Code

Bus. & Prof. Code § 5200................................................................3
Bus. & Prof. Code § 5300................................................................4
Bus. & Prof. Code § 5301................................................................4
Bus. & Prof. Code § 5350.........................................................3, 4, 9
Bus. & Prof. Code § 5360................................................................3
Bus. & Prof. Code § 5463...........................................................4, 9
Bus. & Prof. Code § 5464...........................................................5, 9
Bus. & Prof. Code § 5485.....................................................4, 14, 15

## Government Code

Govt. Code § 13400.......................................................................13
Govt. Code § 11340.5....................................................................13
Govt. Code § 11350.......................................................................13

## Regulations

4 California Administration Code § 2424 .....................................13
4 California Administration Code § 2441 .....................................13
Section 2442 ...............................................................................13
4 California Administration Code § 2443 .....................................13

# OTHER

## Treatises

Tentative Draft of the Restatement (3d) of Restitution,
Section 19, The American Law Institute (2001) .......................13

# I. INTRODUCTION

In its order of August 29, 2005, the court granted partial summary judgment for Plaintiffs on the grounds that the $92 annual permit renewal fee for billboards ("the Fee") imposed by defendant California Department of Transportation ("Caltrans") was adopted in violation of the rulemaking requirements of the California Administrative Procedure Act ("APA"). By this motion for summary judgment, Plaintiffs seek the relief that follows from the court's August 29, 2005 ruling. First, Plaintiffs seek a judicial declaration that the Fee is void. Second, Plaintiffs request a permanent injunction prohibiting Caltrans from enforcing the Fee or attempting to do so, either by threatening penalties or by refusing to issue renewal permits for non-payment of the Fee. Third, Plaintiffs seek a refund of the amounts they paid – under coercion from Caltrans – to comply with the unlawful Fee, in a total amount of $1,868,596.11.

The court granted partial summary judgment for Plaintiffs on the grounds that Caltrans adopted the Fee in violation of the APA. Under California law, such a regulation is void. Plaintiffs therefore are entitled, as part of the final judgment, to a judicial declaration that the fee is void and unenforceable.

In addition to declaratory relief, California courts will issue an injunction against enforcement of a regulation adopted in violation of the APA. As the Ninth Circuit has held, both forms of relief are appropriate.

Finally, Caltrans forced Plaintiffs to pay the unlawful Fee under threat of revoking the permits Plaintiffs needed to remain in business. Under California law a government entity that forces payment of an unlawful fee under threat of penalties must refund the fee to the parties who paid it.

A refund is also required under the Due Process Clause of the United States Constitution. The Supreme Court has held that where a state forces taxpayers to pay a contested tax, the state must provide a refund remedy if the tax is held unlawful. Although the Court's decisions involved unconstitutional taxes, the

American Law Institute has recognized that the reasons for requiring a refund where the tax is unconstitutional apply with equal force where the tax regulation is void under state law. Further, although the court need not reach this issue if it finds that a refund is due under state law, the Fee violates the First Amendment and thus falls squarely within the Court's due-process decisions. Under both state law and the Constitution, Caltrans must refund the Fees Plaintiffs have paid.

As shown by the declarations accompanying this motion (which are summarized in the declaration of Charles Doering), Plaintiffs paid $1,973,192 in complying with the unlawful Fee. In recognition that *some* permit renewal fee is appropriate (although not the excessive $92 Fee Caltrans imposed), Plaintiffs have voluntarily reduced their refund claim to the $72 *increase* the Fee represents over the former $20 fee renewal fee. In so doing, Plaintiffs do not waive their contention that Caltrans' total cost of processing and issuing renewal permits is $6.41 per permit, an amount already paid for by the fees Caltrans receives for outdoor advertising licenses and new sign permits.

Plaintiffs' voluntary reduction leaves a refund claim of $1,662,912. Under Article XV § 1 of the California Constitution Plaintiffs are further entitled to 7% interest in the amount of $205,684.11, for a total refund of $1,868,596.11 as of December 16, 2005. The amount due each Plaintiff is set forth below and should be reflected in the final judgment.

II.     STATEMENT OF FACTS

    A.     <u>Procedural Position of the Case</u>

This action is a challenge to the legality of the $92 permit renewal fee for outdoor advertising displays, imposed by Caltrans beginning on or about June 2, 2003 ("the Fee). In their First Amended Complaint ("FAC"), Plaintiffs allege that the Fee (1) violates the California Administrative Procedure Act, Govt. Code § 13400 <u>et seq.</u> ("APA"); (2) violates the First Amendment of the United States Constitution and Article I, § 2(a) of the California Constitution (collectively "First

Amendment"); and (3) is improperly retroactive with respect to fees collected after January 1, 2003 for the year 2003.

On or about July 12, 2005, Plaintiffs moved for partial summary judgment in this action on all of the above grounds. By their motion Plaintiffs sought: "(1) a partial summary judgment that the Fee is void, and (2) a permanent injunction prohibiting and restraining Caltrans from collecting or attempting to collect the Fee, and from imposing any penalty or sanction for non-payment."

By order of August 29, 2005, the court granted Plaintiffs' motion on the grounds that the Fee was void under the APA. The court did not reach Plaintiffs' claims that the Fee was void under the First Amendment and improperly retroactive for the year 2003.[1]

By this motion Plaintiffs seek a final judgment providing the following relief: (1) a judicial declaration that the Fee is void; (2) a permanent injunction against enforcement of the Fee, including any threats to revoke permits or any refusal to renew permits for non-payment of the Fee; and (3) a refund of $1,662,912 that Plaintiffs paid in increased Fees for the years 2003-2005, plus simple interest at 7% in the amount of $205,684.11, for a total of $1,868,596.11. Plaintiffs expressly requested such relief in the FAC.

B.     The Fee Requirement and the Former $20 Renewal Fee

The California Outdoor Advertising Act, Bus. & Prof. Code § 5200 et seq. (hereinafter cited as "OAA" with Bus. & Prof. Code section numbers, e.g. "OAA § 5200") requires a billboard owner to obtain a permit from Caltrans in order to maintain a billboard along a major highway. OAA § 5350; Keith v. Volpe, 118 F. 3d 1386, 1392 (9th Cir. 1997). Pursuant to OAA § 5360 Caltrans has issued regulations that establish the procedure for renewing the permit, which includes

---

[1]     In deciding the validity of the Fee on state-law grounds the court followed the Supreme Court's and the Ninth Circuit's direction to avoid constitutional adjudication where possible. See, inter alia, Christopher v. Harbury, 536 U.S. 403, 417, 122 S. Ct. 2179, 2188 (1992); Parents Involved in Community Schools v. Seattle School Dist. No. 1, 294 F.3d 1085, 1092 (9th Cir. 2002)(recognizing the "'long-standing principle that courts should avoid making federal constitutional decisions unless and until necessary'").

payment of the renewal fee. See 4 Cal. Admin. Code § 2424(a)(2)-(6).

Former OAA § 5485(a) set the permit renewal fee at $20 per year. (Statement of Undisputed Facts ("SUF") ¶ 4.) Effective January 1, 2003, the Legislature repealed former § 5485 and enacted a new statute. Under the new § 5485(a), the director of Caltrans is to set the fee in an amount that "shall not exceed the amount reasonably necessary to recover the cost of providing the service or enforcing the regulations for which the fee is charged, but in no event shall the fee exceed one hundred dollars ($100)." The fee "may reflect the department's average cost, including the indirect costs, of providing the service or enforcing the regulations." (SUF ¶ 5.)

C.    Caltrans' Coercive Imposition of the $92 Fee

On or about June 2, 2003, Caltrans announced the Fee. Caltrans' notice to Stott Outdoor Advertising typifies its announcement of the fee to the outdoor advertising industry. In its June 2, 2003 notice Caltrans stated: "The Department has established a new outdoor advertising permit fee of $92." Caltrans added:

> You have 30 days from the date of this notice to bring permit [sic] up
> to date on renewal fees. *If you do not comply as requested above, your*
> *permit(s) may be revoked pursuant to Section 5463 of the Act and is*
> *ineligible for renewal.* (Moravec Dec. Exh. 2)(emphasis added).

Caltrans sent similar notices to other outdoor companies. (See e.g., Declarations of McCook (¶ 5, Exh. 2), Colbruno (¶ 4, Exh. 3), Straub (¶ 2, Exh. 1); SUF ¶ 6.)

Under the OAA and Caltrans' regulations, the consequences of not paying the Fee included revocation of licenses and permits, the imposition of fines and even imprisonment. Failure to pay the renewal fee is a violation of OAA § 5350 ("No person shall place any advertising display within the areas [near a major highway] without first having secured a written permit" from Caltrans). Anyone who maintains billboards that are "visible to a state highway or freeway" also must have a license issued by Caltrans. OAA §§ 5300, 5301. OAA § 5463 provides in relevant part:

-4-

The director may revoke any license or permit for the failure to comply with this chapter and may remove and destroy any advertising display placed or maintained in violation of this chapter after 30 days' written notice is forwarded by mail to the permitholder at his or her last known address.

See also 4 Cal. Admin. Code § 2443(a) ("Causes for Revocation of an Outdoor Advertising Permit...(a) The Permittee fails to renew a permit in accordance with the [OAA] and these regulations."); § 2424(a)(requiring payment of renewal fee as part of renewal process). OAA § 5464 defines a violation of any provision of the OAA, as a misdemeanor. Misdemeanor penalties include fines of up to $1,000 and jail sentences of up to six months per violation. Penal Code § 19. A billboard company that failed to pay the Fee thus faced not only revocation of its permits and destruction of its signs, but loss of its license to engage in the outdoor advertising business as well as criminal penalties.

D.   Plaintiffs' Payment of the Fee

To avoid the penalties for non-payment, Plaintiffs paid Fees of an additional $72 per permit for 2003 and $92 per permit for 2004 and subsequent years in the following amounts:

| | | |
|---|---|---|
| Viacom Outdoor, Inc. | $859,060 | SUF ¶ 7 |
| Lamar Advertising Co. | $469,216 | SUF ¶ 8 |
| Fairway Outdoor Advertising, Inc. | $ 35,600 | SUF ¶ 9 |
| Clear Channel Outdoor, Inc. | $432,160 | SUF ¶ 10 |
| Stott Outdoor Advertising | $ 78,388 | SUF ¶ 11 |
| General Outdoor Advertising | $ 29,216 | SUF ¶ 12 |
| Sun Outdoor Advertising, Inc. | $ 18,216 | SUF ¶ 13 |
| Bulletin Displays LLC | $ 11,376 | SUF ¶ 14 |
| Arcturus Outdoor Advertising, Inc. | $  7,464 | SUF ¶ 15 |
| Van Wagner Outdoor | $  6,678 | SUF ¶ 16 |
| Van Wagner/Goodman LLC | $  5,120 | SUF ¶ 17 |

| Hoff Outdoor Advertising | $ 5,464 SUF ¶ 18 |
|---|---|
| Titan Outdoor Advertising | $ 3,336 SUF ¶ 19 |
| Meadow Outdoor Advertising | $ 2,816 SUF ¶ 20 |
| Hunter Media Outdoor Advertising | $ 1,432 SUF ¶ 21 |

III. **PLAINTIFFS ARE ENTITLED TO A DECLARATORY JUDGMENT THAT THE FEE IS VOID.**

In its order of August 29, 2005, the court ruled that the Fee is a regulation adopted in violation of the APA. A regulation that violates the APA is void. Tidewater Marine Western, Inc. v. Bradshaw, 14 Cal. 4th 557, 572, 59 Cal. Rptr. 186, 195(1996) (regulation "void because the [agency] failed to follow APA procedures"); APA § 11340.5(a)(no state agency may enforce or attempt to enforce a regulation adopted in violation of the APA). "Failure to comply with the APA nullifies the rule." Kings Rehabilitation Center, Inc. v. Premo, 69 Cal. App. 4th 215, 217, 81 Cal. Rptr. 2d 406, 407 (1999). "The regulation...may be declared to be invalid for a substantial failure to comply with" the APA's rulemaking requirements. APA § 11350(a). The court therefore should include in its judgment an express declaration that the Fee is void and unenforceable.

IV. **THE COURT SHOULD ENJOIN DEFENDANTS FROM TAKING ANY ACTION TO ENFORCE THE FEE**

APA § 11340.5(a) provides:

(a) No state agency shall issue, utilize, enforce, or attempt to enforce
any guideline, criterion, bulletin, manual, instruction, order, standard
of general application, or other rule, which is a regulation as defined
in Section 11342.600, unless the guideline, criterion, bulletin, manual,
instruction, order, standard of general application, or other rule has
been adopted as a regulation and filed with the Secretary of State
pursuant to this chapter.

As this court determined in its August 29, 2005 order, the Fee is a regulation

-6-

subject to the rulemaking provisions of the APA. The court further ruled that in adopting the Fee Caltrans did not comply with those requirements. Under § 11340.5(a), Caltrans may not enforce the Fee or attempt to do so.

In <u>Hillery v. Rushen</u>, 720 F. 2d 1132, 1139 (9th Cir. 1983), the court affirmed a judgment enjoining the California Department of Corrections from enforcing regulations dealing with inmates' property that the Department had adopted in violation of the APA. In reaching this result the Ninth Circuit rejected the Department's argument that the inmates were required to exhaust administrative remedies. The court reasoned that in actions brought under APA § 11350(a) seeking a declaratory judgment that a regulation is void under the APA, "California courts…have commonly granted both declaratory relief and injunctive relief…." Citing <u>Sperry & Hutchinson Co. v. California State Board of Pharmacy</u>, 241 Cal. App. 2d 229, 50 Cal. Rptr. 489 (1966)(awarding declaratory and injunctive relief under predecessor of § 11350(a)). As in <u>Hillery</u>, the court should enjoin Caltrans from enforcing the Fee or attempting to do so.

Plaintiffs expect Caltrans to attempt to enforce the void Fee in two ways. First, in the absence of a clear prohibition by this court, Caltrans may attempt to revoke Plaintiffs' permits if they do not pay the Fee. Plaintiffs therefore can expect further enforcement efforts by a state agency that continues to view the Fee as lawful.

Second, Caltrans may deny, or (more subtly) delay action on, permit renewal applications that are not accompanied by payment of the Fee. To prevent this kind of passive enforcement, the court should enjoin Caltrans from failing or refusing to issue renewal permits for nonpayment of the Fee.

/ / /
/ / /
/ / /

V.  THE COURT SHOULD ORDER DEFENDANTS TO REFUND TO
    PLAINTIFFS $1,662,912 IN UNLAWFULLY COLLECTED PERMIT
    RENEWAL FEES, PLUS $205,684.11 IN INTEREST

    A.  Plaintiffs Are Entitled to a Refund of the Fees Under State Law

    Although the Fee is not a tax, California case law concerning refund of a void tax provides a useful analogy here. A taxpayer who pays an unlawful tax under threat of penalties is entitled to a refund. In Flynn v. City and County of San Francisco, 18 Cal. 2d 210, 217, 115 P. 2d 3 (1941), the California Supreme Court affirmed a judgment requiring the city and county of San Francisco ("City") to refund vehicle license taxes paid within two years of the date the action was filed. The court held that the taxes duplicated other City vehicle taxes and thus constituted double taxation, which violated the State Constitution.

    The City argued that even if the tax was void, the payments were not refundable because the taxpayers paid "voluntarily." In rejecting this contention, the court reasoned that the City had enacted an "elaborate system for enforcement" of the vehicle tax, including civil and criminal penalties. The City sent post cards to vehicle owners "for the purpose of warning the person subject to these assessments of the penalties; there were some arrests and prosecutions." Id. at 216. The court reasoned that the former rule treating payments of unlawful taxes as "voluntary" and thus not subject to refund had been relaxed in cases where non-payment could result in penalties:

> Among the instances of the relaxation of the strictness of the original common law rule is the case of payments constrained by business exigencies, that is payments of illegal charges or exactions under apprehension on the part of the payers of being stopped in their business if the money is not paid....[T]he general rule with regard to duress of this character is that where, by reason of the peculiar facts a reasonable man finds that in order to preserve his property or protect to his business interests it is necessary to make a payment of money

-8-

which he does not owe and which in equity and good conscience the receiver should not retain, he may recover it. Id. at 217.

Other California courts have reached the same result. See e.g. Whyte v. State, 110 Cal. App. 314, 294 P. 417 (1931) (reversing denial of refund of unconstitutional taxes paid without formal protest where statute imposed fines and imprisonment for non-payment); Vitale v. City of Los Angeles, 13 Cal. App. 2d 704, 706-707, 57 P. 2d 993 (1936)(affirming judgment for recovery of taxes paid under void ordinance that imposed fines and imprisonment for non-payment); Jordan v. Department of Motor Vehicles, 75 Cal. App. 4th 449, 466, 89 Cal. Rptr. 2d 333 (1999)(due process required refund of unconstitutional smog impact fees to named plaintiffs; see Section B. below).

The rationale for requiring the state to refund money paid under threat of penalties pursuant a void tax statute applies equally to money paid under threat of penalties pursuant to a void fee regulation. In both cases the state forces payment of money to which it is not entitled and should pay the money back.

OAA § 5350 requires a permit as a condition of placing a billboard areas near a major highway. Under 4 Cal. Admin. Code § 2424(a)(2) payment of the fee is a requirement for renewing the permit. Under § 2443(a), failure to renew a permit in accordance with Caltrans' regulations is grounds for revocation. Non-payment of the permit renewal fee thus is a violation of the OAA. Under OAA §§ 5463-5464, the consequences of failure to pay the Fee include revocation of the holder's permits and outdoor advertising license, destruction of its signs, fines and even imprisonment.

Although a sign company can contest the fee, it faces the prospect of having its permit revoked if the challenge is unsuccessful. Under 4 Cal. Admin. Code § 2441(a), the first step in enforcement is a written notice of violation from Caltrans. Section 2442(b) provides that upon receipt of timely written request for review of violation notice Caltrans "does not revoke the permit or remove the Display

-9-

*until...a final decision is issued by a court of law.*" (Emphasis added.) This language suggests that at the end of an unsuccessful challenge to a permit renewal fee, the billboard operator who does not pay the fee faces possible loss of its sign.[2] State law thus forces a billboard company that views the Fee as excessive to pay the Fee and seek a refund.

Caltrans pointedly reminded outdoor companies that if they did not pay the Fee within 30 days they faced revocation of their permits. (SUF ¶ 6; see also e.g., J. Moravec Dec. ¶ 2.) Plaintiffs were quite aware of the penalties for nonpayment and paid to avoid those penalties. See e.g McCook Dec. ¶ 6, Kudler Dec. ¶ 7, Colbruno Dec. ¶ 5, Guild Dec. ¶ 6, Wynn Dec. ¶ 4, Hoff Dec. ¶ 6, Straub Dec. ¶ 3, Shinn Dec. ¶ 3. Those who did not receive overt threats were under no less a threat of penalties if they did not pay. Under the cases cited above, Plaintiffs paid the unlawful Fee under legal duress and therefore are entitled to a refund.

B.    Due Process Requires that Caltrans Refund the Unlawful Fees It Collected From Plaintiffs

In the case of a state tax that violates the Federal Constitution the Supreme Court has held:

> If a State places a taxpayer under duress promptly to pay a tax when due and relegates him to a postpayment refund action in which he can challenge the tax's legality, the Due Process Clause of the 14[th] Amendment obligates the State to provide meaningful backward-looking relief to rectify any unconstitutional deprivation.

McKesson Corporation v. Division of Alcoholic Beverages and Tobacco, Etc., 496 U.S. 18, 31, 110 S. Ct. 2238 (1990).

In McKesson, a liquor distributor successfully challenged a Florida tax that

---

[2]    The owner might have a remedy under Oklahoma Operating Co. v. Love, 252 U.S. 331, 337-338, 40 S. Ct. 338 (1920)(party challenging administrative order entitled to permanent injunction against fines and other penalties if challenge is made in good faith). The potential cost of mistakenly relying on such a remedy, however, is the destruction of the sign owner's business.

-10-

1     gave a preference to distributors of beverages made with ingredients made in-state.

2     Although the Florida state courts held the tax invalid under the Commerce Clause,

3     they refused to order a refund. The Supreme Court reversed. The Court reasoned

4     that Florida imposed sanctions and summary remedies designed to compel

5     payment of the tax, which foreclosed a "predeprivation" action by the taxpayer to

6     avoid paying it. Having provided no "meaningful opportunity to withhold

7     payment and to obtain a predeprivation determination" of the validity of the tax,

8     Florida was required to provide a "clear and certain" postdeprivation remedy in the

9     form of a refund.

10          In reaching this result the <u>McKesson</u> Court relied on two decisions that are

11    particularly relevant here. In the first, <u>Atchison, Topeka & Santa Fe Railway Co.</u>

12    <u>v. O'Connor</u>, 223 U.S. 280, 285-286, 32 S. Ct. 216 (1912) the Court held that a

13    railroad company was entitled to a refund of unconstitutional state taxes paid under

14    protest. The state conceded the invalidity of the tax but claimed that a refund was

15    unavailable because the company had paid the taxes "voluntarily." In rejecting this

16    argument Justice Holmes reasoned:

17          It is reasonable that a man who denies the legality of a tax should have

18          a clear and certain remedy. The rule being established that, apart from

19          special circumstances, he cannot interfere by injunction with the

20          state's collection of its revenues, an action at law to recover back what

21          he has paid is the alternative left.

22          In <u>Ward v. Love County</u>, 253 U.S. 17, 40 S. Ct. 419 (1920), the Court held

23    that Native Americans who paid state taxes that violated a federal treaty were

24    entitled to a refund. After determining that the taxes were paid under compulsion

25    the Court concluded:

26          As the payment was not voluntary, but made under compulsion, no

27          statutory authority was essential to enable or require the county to

28          refund the money. It is a well-settled rule that 'money got through

-11-

imposition' may be recovered back; and, as this court has said on several occasions, 'the obligation to do justice rests upon all persons, natural and artificial, and if a county obtains the money or property of others without authority, the law, independent of any statute, will compel restitution or compensation.' [Citations omitted.] To say that the county could collect these unlawful taxes by coercive means and not incur any obligation to pay them back is nothing short of saying that it could take or appropriate...property...arbitrarily and without due process of law. Id., 253 U.S. at 24.

Although the McKesson-Ward line of cases dealt with state taxes that violated federal law, rationale of those cases supports a refund where the tax or fee violates state law. In the Tenatative Draft of the Restatement (3d) of Restitution, Section 19, the American Law Institute recognizes the similar rationale for a refund where a tax or fee is illegal under state law:

Supreme Court authority in this area has been limited to claims for refund of state taxes held to be illegal on federal grounds. The Court is no doubt reluctant to engage itself any further than necessary in the state law of tax refunds, and it is predictable that it will do so only in vindication of federal interests. On the other hand, *neither the language of the Due Process Clause, nor the logic of its application to the restitution of tax payments, can be restricted to exactions that violate federal law. Payment of a tax that is illegal under state law raises identical concerns about the process by which a taxpayer has been deprived of property.* Payment of a tax that is improperly assessed under a valid tax statute raises concerns that--while not identical-- are closely analogous. State courts that are inclined to liberalize the availability of restitution for tax payments on any of the grounds identified within this section may derive legitimate support

-12-

1    imposition' may be recovered back; and, as this court has said on
2    several occasions, 'the obligation to do justice rests upon all persons,
3    natural and artificial, and if a county obtains the money or property of
4    others without authority, the law, independent of any statute, will
5    compel restitution or compensation.' [Citations omitted.] To say that
6    the county could collect these unlawful taxes by coercive means and
7    not incur any obligation to pay them back is nothing short of saying
8    that it could take or appropriate...property...arbitrarily and without
9    due process of law. Id., 253 U.S. at 24.

10   Although the McKesson-Ward line of cases dealt with state taxes that violated
11   federal law, rationale of those cases supports a refund where the tax or fee violates
12   state law. In the Tenatative Draft of the Restatement (3d) of Restitution, Section 19
13   (2001), the American Law Institute recognizes the similar rationale for a refund
14   where a tax or fee is illegal under state law:

15        Supreme Court authority in this area has been limited to claims for
16        refund of state taxes held to be illegal on federal grounds. The Court is
17        no doubt reluctant to engage itself any further than necessary in the
18        state law of tax refunds, and it is predictable that it will do so only in
19        vindication of federal interests. On the other hand, *neither the*
20        *language of the Due Process Clause, nor the logic of its application to*
21        *the restitution of tax payments, can be restricted to exactions that*
22        *violate federal law. Payment of a tax that is illegal under state law*
23        *raises identical concerns about the process by which a taxpayer has*
24        *been deprived of property.* Payment of a tax that is improperly
25        assessed under a valid tax statute raises concerns that--while not
26        identical-- are closely analogous. State courts that are inclined to
27        liberalize the availability of restitution for tax payments on any of the
28        grounds identified within this section may derive legitimate support

-12-

from the Due Process Clause of the Fourteenth Amendment, even where the United States Supreme Court does not require them to do so. Id. at Section 19, Reporter's Note b. (Emphasis added.)[3]

The Restatement authors accordingly provide the following illustration of a case in which a refund is appropriate: "11. Taxpayer pays fees to City pursuant to an ordinance that was enacted in violation of applicable state law. Taxpayer has a claim against City to recover the amount of the illegal fees." Id. at 4. The illustration is based on Ves Carpenter Contractors, Inc. v. City of Diana, 422 So. 2d 342 (Fla. App. 1982),[4] in which the court held that the plaintiff-developer was entitled to a refund of sewer-impact fees imposed without a valid enabling ordinance, a procedural defect akin to failure to comply with the APA. The McKesson-Ward refund rationale thus applies where, as here, the state collects a fee in violation of state law.

Further, even if McKesson-Ward were limited to unconstitutional taxes, Plaintiffs showed in their original Motion for Partial Summary Judgment that the Fee violates the First Amendment. Under the First Amendment, such a fee may only recoup the amount necessary to process the permit renewal application and issue the new permit. Fly Fish, Inc. v. City of Cocoa Beach, 337 F. 3d 1301, 1314, 1315 (11th Cir. 2003); Eastern Connecticut Citizens Action Group v. Powers, 723 F. 2d 1050, 1056 (2nd Cir. 1983); Wendling v. City of Duluth, 495 F. Supp. 1380, 1385 (D. Minn. 1980); Bayside Enterprises, Inc. v. Carson, 450 F. Supp. 696, 705 (M.D. Fla. 1978); Moffatt v. Killian, 360 F. Supp. 228, 232 (D. Conn. 1973); AAK v. City of Woonsocket, 830 F. Supp. 99, 105 (D.R.I. 1993). Caltrans bears the burden of proving that the Fee complies with this standard. Fly Fish, 337 F. 3d at

---

[3] For the court's convenience a copy of Section 19 is attached as Exhibit 1 to Plaintiffs' concurrently filed Appendix of Authorities.

[4] A copy of Ves Carpenter is attached to the accompanying Appendix of Authorities as Exhibit 2.

-13-

1315 ("[I]t is the City's burden to establish that its licensing fee is justified by the cost of processing the application").[5]

The Fee violates the First Amendment in that Caltrans set the Fee at $92 in order to recover *all* of its costs relating to billboard regulation, not just the cost of processing the renewal applications and issuing the permits. Further, regardless of whether Caltrans can use the fee to recoup all of its costs or only the costs of permitting, Caltrans failed to meet its burden of showing that Fee does not exceed those costs.[6] The McKesson-Ward line of cases thus is applicable here without extending the rationale of those decisions to violations of state law. Plaintiffs therefore are entitled to recover the full amount they paid to comply with the Fee.

C.    Plaintiffs Will Voluntarily Reduce Their Monetary Recovery by the Amount of the Prior $20 Renewal Fee

The permit renewal fee under former OAA § 5485 was $20 per permit. As of January 1, 2003, former § 5485 was repealed and the new § 5485, allowing the director of Caltrans to set the amount of the renewal fee, took effect. See Cal. Bus. & Prof. Code § 5485 (Westlaw 2005)(stating effective date as January 1, 2003). The effect of repealing former § 5485 was "to obliterate it as completely...as if it had never been passed." Spears v. County of Modoc, 101 Cal. 303, 305, 35 P. 869 (1894), quoted in People v. Alexander, 178 Cal. App. 3d 1250 1259 n. 13, 224 Cal. Rptr. 290, 296 (1986). As a result, beginning January 1, 2003, Plaintiffs therefore were no longer obligated to pay the former fee of $20.

Nor were Plaintiffs ever obligated to pay the Fee Caltrans imposed pursuant to the new § 5485. As this court has ruled, the Fee is void under the APA. Therefore, beginning January 1, 2003, *there has been no valid permit renewal fee.*

---

[5]    Since Plaintiffs' prior motion raising the First Amendment arguments is in the court's file, Plaintiffs will limit the discussion here to a short summary. Plaintiffs incorporate Section V. of their prior motion by reference as though set forth in full.

[6]    See Plaintiffs' Reply In Support of Motion for Partial Summary Judgment at 3-7.

-14-

1 Beginning January 1, 2003, Plaintiffs thus were not obligated to pay any permit
2 renewal fee to Caltrans.

3 Under not-so-subtle coercion from Caltrans, Plaintiffs paid the Fee of an
4 additional $72 per permit for 2003 and $92 per year for 2004 and 2005. As
5 summarized in Exhibit A to the accompanying Declaration of Charles Doering,
6 after January 1, 2003, these payments totaled $1,973,192. As shown above,
7 Plaintiffs are entitled to a refund of this amount. Under Article XV, § 1 of the
8 California Constitution, Plaintiffs are also entitled to 7% interest[7] in the amount of
$238,374.41. (Doering Dec. Exh. A.)

9 Although they are entitled to the full $1,973,192, Plaintiffs have voluntarily
10 reduced their refund request to $1,662,912, which represents only the $72 *increase*
11 Caltrans imposed over the $20 fee required under former OAA § 5485. Plaintiffs
12 are willing to do so because they recognize a legitimate regulatory function in
13 permit renewal and do not seek to deprive Caltrans of all revenue to fund that
14 activity.

15 Even at $20, however, Plaintiffs are overpaying for their permits. Caltrans'
16 data indicate that the real cost of processing and issuing the renewal permits is
17 $6.41 per permit. [8] In voluntarily reducing their refund request, Plaintiffs therefore
18 do not waive, and expressly preserve, their contention that the costs associated with
19

20 [7] "[S]tate law governs prejudgment interest vis-a-vis state claims, even when the
21 basis for the district court's jurisdiction stemmed originally from the presence of a
federal question." Freeman v. Package Machinery Co., 865 F. 2d 1331, 1345 (5th
22 Cir. 1988). Under Article XV, Section 1 of the California Constitution,
prejudgment interest is 7%, unless the Legislature sets a different rate of no more
23 than 10%. Pacific-Southern Mort. Trust Co. v. Ins. Co. of North America, 166 Cal.
App. 3d 703, 716, 212 Cal.Rptr. 754 (1985). As there is no express statutory
24 authorization for a greater rate, the prejudgment interest applicable here is limited
by the constitutional rate of 7%. Lund v. Albrecht, 936 F. 2d 459, 465 (9th Cir.
25 1991).

26 [8] In Plaintiffs' prior moving papers they showed that Caltrans' data showed that
the cost per permit of the work Caltrans performs in connection with *all* licensing
27 and permitting work is $75,905.00, or $6.41 per sign. Caltrans, moreover, collects
$190,000 a year in license and new-permit fees, which probably pays – and indeed
28 overpays -- for permit renewal as well as licensing and the issuance of new permits.

-15-

permit renewal that Caltrans may recoup through the renewal fee are significantly *less than* $20 per permit.

In limiting their refund request to $72 per permit, Plaintiffs reduce the amount of the refund to $1,661,070, plus 7% interest in the amount of $205,684.11. Plaintiffs thus seek a total refund of $1,868,596.11 as of December 16, 2005. The amounts each of the Plaintiffs seek are the following:

| | |
|---|---|
| Viacom Outdoor, Inc. | $ 812,370.01 <br> Doering Dec. ¶ 4, Exh. B. |
| Lamar Advertising Co. | $443,484.74 <u>Id.</u> |
| Fairway Outdoor Advertising, Inc. | $35,069.89 <u>Id.</u> |
| Clear Channel Outdoor, Inc. | $409,087.24 <u>Id.</u> |
| Stott Outdoor Advertising | $74,926.63 <u>Id.</u> |
| General Outdoor Advertising | $21,849.59 <u>Id.</u> |
| Sun Outdoor Advertising, Inc. | $14,256 <u>Id.</u> |
| Bulletin Displays LLC | $10,647.52 <u>Id.</u> |
| Arcturus Outdoor Advertising, Inc. | $5,220.42 <u>Id.</u> |
| Van Wagner Outdoor Advertising | $6,319.86 <u>Id.</u> |
| Van Wagner/Goodman LLC | $4,805.50 <u>Id.</u> |
| Hoff Outdoor Advertising | $5,129.06 <u>Id.</u> |
| Titan Outdoor Advertising | $3,125.06 <u>Id.</u> |
| Meadow Outdoor Advertising | $2,668.24 <u>Id.</u> |
| Hunter Media Outdoor Advertising | $1,304.42 <u>Id.</u> |

D.    <u>Heywood Company's Monetary Claims</u>

This action was brought by plaintiff California State Outdoor Advertising Association ("CSOAA") and its members ("Member Plaintiffs"). CSOAA does not have a direct claim for a monetary refund. All of the Member Plaintiffs have asserted a claim for a refund in this motion except for plaintiff Heywood Company Outdoor ("Heywood"). Heywood has merged into another billboard company

1  which is not a plaintiff in this action, though the right to recover refunds was

2  apparently maintained by the former principal of Heywood. As soon as possible,

3  Heywood or its successor will either (1) dismiss its claim or (2) submit a

4  declaration in support of a refund claim.

5  VII.  CONCLUSION

6  The Fee is void. Caltrans had no basis for collecting the $1,973,192 it

7  unlawfully extorted from Plaintiffs. In its final judgment, the court therefore

8  should: (1) declare the Fee void; (2) enjoin Caltrans from taking any action to

9  enforce the Fee and from withholding any permit renewal or other regulatory

10  action on grounds of non-payment of the Fee; and (3) order Caltrans to refund to

11  Plaintiffs $1,662,912 in Fees paid, plus $205,684.11 in interest, for a total of

12  $1,868,596.11.

13

14  Dated: November 14, 2005      Respectfully submitted,

15                                CASE, KNOWLSON, JORDAN & WRIGHT LLP

16

17                                By: _____
                                      Michael F. Wright
18                                    Armen Tamzarian
                                      Attorneys for Plaintiffs
19

20

21

22

23

24

25

26

27

28

-17-