UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

CALIFORNIA STATE OUTDOOR
ADVERTISING ASSOCIATION, INC.,
a California corporation, et
al.,

           Plaintiffs,

    v.

STATE OF CALIFORNIA,
DEPARTMENT OF TRANSPORTATION,
WILL KEMPTON, in his official
capacity as Director,
CALIFORNIA DEPARTMENT OF
TRANSPORTATION, and DOES 1-50
inclusive,

           Defendants.

_____/

NO. CIV. S-05-0599 FCD/DAD

<u>CORRECTED</u>
<u>MEMORANDUM AND ORDER</u>
(* indicates correction)

----oo0oo----

    This matter is before the court on a motion for summary

judgment and a motion for attorney fees filed by plaintiffs,

California Outdoor Advertising Association, Inc., and its

members, Arcturus Outdoor Advertising, Bulletin Displays, LLC,

Clear Channel Outdoor, Inc., Fairway Outdoor Advertising, Inc.,

1

Edwards Outdoor Signs, General Outdoor Advertising, Inc., James
N. Hoff doing business as Hoff Outdoor Advertising, Hunter Media,
Lamar Central Outdoor, Inc., J. R. Zukin Corporation doing
business as Meadow Outdoor Advertising, Sun Outdoor Advertising,
Stott Outdoor Advertising, Titan Advertising, United Outdoor
Advertising, Van Wagner Communications, LLC, Van Wagner/Goodman,
LLC, and Viacom Outdoor, Inc. (collectively "CSOAA").  Defendants
State of California Department of Transportation and Will
Kempton, Director of the California Department of Transportation
(collectively "Caltrans") oppose the motions.  The court held a
hearing on the motions February 10, 2006.

    After considering the memoranda filed by the parties and
arguments made by counsel at the hearing, and for the reasons
stated herein, plaintiffs' motion for summary judgment is
GRANTED, and plaintiffs' motion for attorneys' fees is GRANTED.

**BACKGROUND**

    Caltrans, a department of the State of California, regulates
outdoor advertising pursuant to the Outdoor Advertising Act,
California Business & Professions Code § 5200 et seq. ("OAA") and
regulations promulgated by Caltrans pursuant to the OAA.  (Defs.'
Response to Pls.' Statement of Undisp. Facts ("RUF") ¶ 1).  The
OAA requires that any person operating an outdoor advertising
display in California referred to herein as "sign" or
"billboard") obtain a permit ("Billboard permit") issued by the
director of Caltrans or his authorized agent, which must be
renewed every five years.  Cal Bus. & Prof. Code §§ 5350,
5360(a); RUF ¶ 3.  Prior to January 1, 2003, the fee for
obtaining a Billboard permit was set by statute, California

2

Business and Professions Code section 5485(a), at $20.00 per year for each billboard.  (RUF ¶ 4).

Effective January 1, 2003, the Legislature amended section 5485(a), which now provides that the Director of Caltrans shall set the Billboard permit fee:

> (a)(1) The annual permit fee for each advertising display shall be set by the director.
> (2) The fee shall not exceed the amount reasonably necessary to recover the cost of providing the service or enforcing the regulations for which the fee is charged, but in no event shall the fee exceed one hundred dollars ($100). This maximum fee shall be increased in the 2007-08 fiscal year and in the 2012-13 fiscal year by an amount equal to the increase in the California Consumer Price Index.
> (3) The fee may reflect the department's average cost, including the indirect costs, of providing the service or enforcing the regulations.

Cal. Bus. & Prof. Code § 5485(a).

On or about June 2, 2003, Caltrans announced a new annual permit renewal fee of $92.00, which Caltrans indicated it promulgated pursuant to newly-amended section 5485(a).  (RUF ¶ 6).  At or around the same time, Caltrans notified permit holders that they were required to pay within thirty days[1] an additional $72.00 per billboard for their 2003 permits or the permits would be revoked pursuant to California Business and Professions Code § 5463.[2]  (RUF ¶ 6).  In setting the new Billboard permit fee,

---

[1]     According to Caltrans, it extended the thirty-day period to sixty days on July 17, 2003.  (RUF ¶ 6).

[2]     California Business and Professions Code § 5463 provides in relevant part: "The director may revoke any license or permit for the failure to comply with this chapter and may remove and destroy any advertising display placed or maintained in violation of this chapter after 30 days written notice is forwarded by mail to the permitholder at his or her last known address. If no permit has been issued, a copy of the notice shall be forwarded by mail to the display owner, property owner, or

3

Caltrans did not follow the rulemaking provisions of the Administrative Procedures Act, California Government Code section 11340, et seq. ("APA").

Plaintiffs filed their original complaint with the Los Angeles County Superior Court.[3]  On November 29, 2004, plaintiffs filed a First Amended Complaint asserting four claims: (1) violation of the APA; (2) violation of California Business and Professions code section 5485(a); (3) violation of Article I, §2(a) of the California Constitution protecting liberty of speech; and (4) against defendant Kempton only, a claim under 42 U.S.C. § 1983 for violation of plaintiff's First Amendment rights.

On January 5, 2005, defendants removed the action to the United States District Court for the Central District of California on the basis of the First Amendment claim against defendant Kempton.  Defendants subsequently filed a motion for change of venue which was granted by order dated March 14, 2005. The case was transferred to this court on March 24, 2005.

On June 7, 2005 defendants filed a motion for partial summary judgment.  On July 12, 2005 plaintiffs filed a cross motion for partial summary judgment as to the validity of the permit fee.  On August 29, 2005, the court granted plaintiff's motion on the grounds that the APA applied to defendants' setting of the permit fee and Caltrans failed to comply with the APA procedure.

---

advertiser at his or her last known address."

[3]    The court cannot locate in the file the date plaintiffs filed the original complaint.

4

On November 14, 2005, plaintiffs filed a motion for summary judgment, seeking (1) declaratory relief that the permit fee is void; (2) an injunction prohibiting Caltrans from taking any action to enforce the fee and from withholding any permit renewal or other regulatory action on the grounds of non-payment of the fee; and (3) refunds to plaintiffs for permit fees paid.  On November 30, 2005, the parties submitted a stipulation to the court.  The parties agreed to continue the hearing on plaintiff's motion for summary judgment.  The parties also agreed that defendant Caltrans would not collect 2006 permit renewal fees until the fee was set through the APA procedure and the defendants would be permanently enjoined from imposing any penalties upon plaintiffs for failure to pay the 2006 permit renewal fees before December 31, 2005.  On December 1, 2005, the court entered an order based upon these stipulations.  On January 3, 2006, plaintiffs filed a motion for award of attorneys' fees.  Defendants subsequently filed oppositions to both of plaintiffs' motions.

**STANDARD**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Under this standard, an issue is "genuine" if there is sufficient evidence for a reasonable jury to find for the nonmoving party and a fact is "material" when it may affect the outcome of the case under the substantive law that provides the claim or defense.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  The

determination is made based solely upon admissible evidence.  Orr v. Bank of America, 285 F.3d 764, 773 (9th Cir. 2002). Furthermore, the court must view inferences made from the underlying facts in the light most favorable to the nonmoving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).

The moving party has the initial burden to demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party is without the ultimate burden of persuasion at trial, it may either produce evidence negating an essential element of the opposing party's claim, or demonstrate that the nonmoving party does not have enough evidence to carry its ultimate burden of persuasion at trial.  Nissan Fire & Marine Insurance Co. v. Fritz Companies, Inc., 210 F.3d 1099, 1106 (9th Cir. 2000).  If the moving party meets this initial requirement, the burden then shifts to the opposing party to go beyond the pleadings and set forth specific facts that establish a genuine issue of material fact remains for trial.  Matsushita Elec. Indust. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986).  Summary judgment should not be granted where "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Anderson, 477 U.S. at 250.

**ANALYSIS**

**A.   Declaratory Relief**

Plaintiffs seek a judicial declaration that the permit renewal fee imposed without compliance with APA procedures is void.  "To give weight to an improperly adopted regulation . . . would permit an agency to flout the APA by penalizing those who

were entitled to notice and an opportunity to be heard but received neither." <u>Tidewater Marine Western, Inc. v. Bradshaw</u>,[4] 14 Cal. 4th 557, 577 (1996) (quoting <u>Armistead v. State Personnel Bd.</u>, 22 Cal. 3d 198, 204 (1978)).  Therefore, "[f]ailure to comply with the APA nullifies the rule." <u>Kings Rehab. Ctr., Inc. v. Premo</u>, 69 Cal. App. 4th 215, 217 (1999) (citing Cal. Gov. Code § 11350); <u>see also</u> <u>Hillery v. Rushen</u>, 720 F.2d 1132, 1134 (9th Cir. 1983).

As discussed in the court's August 29, 2005 order, defendants were required to comply with the APA in setting the permit renewal fee.  Defendants failed to comply with any APA procedures in setting the $92 fee.  Therefore, the $92 permit fee set without compliance with APA procedures is void.

Defendants argue that declaratory relief is improper because the time for this remedy has passed.  However, the proper relief for an individual seeking a determination of the validity of a regulation is declaratory relief.  Cal. Gov. Code § 11350 (West 2005).  Because plaintiffs seek determination of the validity of the permit fee, declaratory relief is the appropriate remedy and the request for this type of relief is not untimely.

Defendants also argue that none of the public policy concerns protected by the APA were violated by setting the fee without compliance with APA procedures; rather, the legislative intent to increase the permit renewal fee would be frustrated by

---

[4]    Defendants argue that <u>Tidewater</u> is distinguishable from this case because the regulations at issue in <u>Tidewater</u> were "written interpretive policies" whereas the regulations in this case were authorized by statute.  However, these differences are irrelevant.  In both <u>Tidewater</u> and this case, defendants failed to comply with the APA in adopting regulations.

1   declaring the fee void.  Plaintiffs correctly point out, however,

2   that the relevant legislative intent is that set forth in §

3   11346(a) of the APA, which requires all state agencies to

4   regulate in compliance with the APA except where the Legislature

5   authorizes an express exemption.  As set forth in the court's

6   August 29, 2005 order, no such exemption applies to the setting

7   of the permit renewal fee.  Therefore, the purposes of the APA

8   would be frustrated by a failure to declare the fee invalid.

9       Plaintiffs' motion for declaratory relief is GRANTED.  The

10  permit fee is void for failure to comply with the APA.

11  **B.    Injunction Against Enforcement of the Fee**

12      Plaintiffs seek a permanent injunction, enjoining defendants

13  from future enforcement of the permit fees and from penalizing

14  plaintiffs in any way for non-payment of the fees.  California

15  courts commonly grant both declaratory and injunctive relief in

16  cases brought under § 11350.  <u>Hillery</u>, 720 F.2d at 1139.

17  California Government Code § 11340.5(a) prohibits a state agency

18  from enforcing or attempting to enforce a regulation not adopted

19  in compliance with the APA.  Cal. Gov. Code § 11340.5 (West

20  2005).  An injunction preventing enforcement of the fees or

21  penalties for non-payment of the fees would be consistent with

22  this prohibition.

23      Defendants argue that plaintiffs' request for injunctive

24  relief is moot because defendants have initiated APA rulemaking

25  procedures in setting the 2006 fee and because the parties

26  entered into a stipulated injunction entered by the court on

27  December 1, 2005.  However, defendants have not completed the APA

28  procedure at this point.  The court cannot speculate that

8

1   defendants will continue through the APA process, thereby making

2   plaintiffs' requested injunction moot.  Further, the stipulated

3   injunction provides that defendants are permanently enjoined from

4   imposing any penalties upon plaintiffs for failure to pay the

5   2006 permit renewal fees before December 31, 2005.  This is a

6   more limited injunction than that which plaintiff requests in

7   this motion.  Plaintiffs request a permanent injunction

8   prohibiting any future enforcement of the invalid fees as well as

9   prohibiting the imposition of penalties for non-payment of the

10  invalid fees.  Therefore, plaintiffs' request for an injunction

11  is not rendered moot by the more limited permanent injunction

12  stipulated to by the parties.

13      Plaintiffs are entitled to injunctive relief in order to

14  enforce the court's finding that the permit fee set without

15  compliance with the APA is void.  As such, plaintiffs' request

16  for a permanent injunction prohibiting future enforcement of the

17  current, invalid permit renewal fee that was not enacted pursuant

18  to APA procedures, as well as penalties for failure to pay that

19  fee is GRANTED.

20  **C.   Refund and Interest for Past Fees Paid**

21      Plaintiffs seek a refund in the amount of $72 per permit for

22  the years 2003-2005, when the fee was set without compliance with

23  the APA.  The plaintiffs seek the difference between the new fee

24  set, $92 per permit, and the previous fee, $20 per permit, plus

25  seven percent interest.  Defendants oppose the refund of any

26  fees.

27  /////

28  /////

9

### 1.   Refund

Plaintiffs argue that both due process and California state case law[5] support the refund of fees paid pursuant to an invalid regulation.   Plaintiffs analogize their case to cases concerning refunds of a void tax, arguing that the rationale of those cases is equally applicable to plaintiffs' circumstances.   Exaction of a tax constitutes a deprivation of property for which the State must provide procedural safeguards against unlawful exactions in order to satisfy the commands of the Due Process Clause. McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco, Etc., 496 U.S. 18, 36 (1990).   California courts have held that where taxes or fees have been illegally levied and payment is effected by compulsion, the taxpayer is entitled to a refund.   See Jordan v. Dept. of Motor Vehicles, 75 Cal. App. 4th 449 (1999) (affirming refund of unconstitutional smog impact fee to plaintiffs who brought suit); Flynn v. City and County of San Francisco, 18 Cal. 2d 210, 216 (1941); Vitale v. City of Los Angeles, 13 Cal. App. 2d 704, 706 (1936); White v. State of California, 110 Cal. App. 314, 315-16 (1930).

Involuntary payment of the tax is a prerequisite to recovery of a refund.   Flynn, 18 Cal. 2d at 216.   In Flynn v. City and

---

[5]     Plaintiffs cite to decisions of California courts as an independent ground for granting the refund.   However, while many of these cases do not explicitly reference the Due Process clause, the analysis of the relevant facts and issues is similar to a traditional Due Process analysis.   Compare Flynn v. City and County of San Francisco, 18 Cal. 2d 210 (1941) with McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco, Etc., 496 U.S. 18, 38-39 (1990).   Both inquiries involve an inquiry into the applicable predeprivation remedy, either for purpose of the voluntariness component analyzed in state law cases or for the adequacy of the procedure analyzed in due process cases.

County of San Francisco, the court held that the plaintiff was entitled to a refund of an illegal license tax where the plaintiff had a reasonable belief that payment of the license tax was necessary to protect his business. 18 Ca. 2d at 217. The court stated that the involuntary or voluntary character of a payment "is to be determined from the terms of the ordinance under which the taxes are imposed, the circumstances attendant upon payment, and a consideration of the consequences which might follow upon non-payment. Id. The Flynn court held that a refund was warranted because the "motivating cause of the payments was fear of infliction of the penalties," which included monetary penalties for delinquencies, civil actions resulting in writs of attachments, and criminal liability. Id. 216-17.

Plaintiffs assert that, like the plaintiff in Flynn, they were coerced into making payments pursuant to an invalid licensing system because of the potentially damaging repercussions to their business interests that would result from non-payment. Specifically, plaintiffs argue that the invalid fee payments were coerced and, thus, involuntary due to the structure of the regulations relating to permit acquisition and renewal. California Business and Professions Code § 5350 requires that plaintiffs possess a permit as a condition of placing billboard areas near a major highway. Cal. Bus. & Prof. Code § 5350 (West 2005). Payment of the fee is required to renew such a permit. 4 C.C.R. § 2424(a). Failure to renew a permit is grounds for revocation of the permit. 4 C.C.R. § 2443. Further, the director may remove or destroy any advertising display if the permit is not renewed. Cal. Bus. & Prof. Code § 5463. Finally,

11

any person who violates the permit requirement is guilty of a misdemeanor.  Cal. Bus. & Prof. Code § 5464.  Because of the monetary, civil, and criminal penalties accompanying non-payment of the renewal fee, plaintiffs argue that the payment was not voluntary.

As an initial matter, defendants argue that state tax cases are not relevant to plaintiffs' claims.  Defendants contend that because the statute granting defendants authority to set a new fee has not been held unconstitutional, the cases cited by plaintiffs are inapplicable.[6]  There is no dispute that § 5485 granted defendants the authority to set a new permit renewal fee.  However, the court has held that the fee setting regulation adopted pursuant to this statutory grant is void for failure to comply with the ADA.  Therefore, plaintiffs money was paid pursuant to an invalid regulation.  As such, plaintiffs' analogy to state tax cases, where tax payers sought a refund for moneys paid pursuant to illegal, unconstitutional, or void laws or regulations, is relevant to plaintiffs' claims for a refund for fees paid pursuant to an invalid regulation.

Defendants also argue that plaintiffs' payments were voluntary because plaintiff had pre-deprivation remedies

---

[6]     Defendants also contend that <u>Flynn</u> is inapplicable to this case because the tax at issue in that case was a general revenue tax as opposed to a specific regulatory fee.  Defendants neither provide authority nor offer explanation as to why the purpose of an invalid tax or fee bears any relationship to whether a refund is warranted.  To the contrary, the court finds that, regardless of what the tax or fee sought to fund or accomplish, the relevant issue of concern is that payments were made pursuant to an invalid statutory scheme and defendants have been unjustly enriched.

available to them.  At the relevant times in this case,[7] § 2424

of the California Code of Regulations provides that "[u]pon

timely written request . . . for review" of a violation, the

Department "does not revoke the permit or remove the Display

*until* . . . a final decision is issued."  4 C.C.R. § 2424 (West

2002, West 2003).  This regulation does provide for a pre-

deprivation review of the permit.  However, as plaintiff argues,

the remedy still results in exposure to monetary, civil, and

criminal penalties.  Section 2424 of California Code of

regulations provides that non-payment penalties include a

"mandatory penalty" of $100 per permit if payment is late.  4

C.C.R. § 2424 (West 2006).  The permit may also be revoked, the

permit holder's license may be revoked, the sign may be removed,

and there are potential misdemeanor penalties.  4 C.C.R. §§ 2442-

43; Cal. Bus. & Prof. Code §§ 5463-64.  Where the sanctions for

failure to comply are merely prolonged by the pre-deprivation

hearing, as indicated by the language "until" in § 2442, such a

pre-deprivation remedy is meaningless.  See McKesson Corp. v.

Div. of Alcoholic Beverages & Tobacco, Etc., 496 U.S. 18, 38-39

(1990).

In McKesson, the Court stated that a meaningful pre-

deprivation remedy requires not only a fair opportunity to

challenge the accuracy and legal validity of the obligation, but

also a clear and certain remedy for any erroneous or unlawful

collection of money.  Id. at 38.  The court also acknowledged

that it has long held that "when a tax is paid in order to avoid

---

[7]   Section 2424(b) was subsequently amended and the new
regulatory language became operative on Dec. 23, 2004.

financial sanctions or a seizure of . . . property, the tax is paid under 'duress' in the sense that the State has not provided a fair and meaningful pre-deprivation procedure.  Id. at 39 n.20.

Because the pre-deprivation procedure requires plaintiffs to expose themselves to penalties, sanctions, and a threat of seizure of personal property, the procedure is not meaningful. Therefore, the existence of this remedy does not render plaintiffs' payment of the fees voluntary.  Plaintiffs' payments were motivated by the fear of infliction of the penalties.  See Flynn, 18 Ca. 2d at 216-17.  As such, plaintiffs are entitled to a refund of the fees paid to defendants.

## 2.  California Tort Claims Act

Defendants argue that if the court finds that plaintiffs are entitled to a refund of fees paid, not all plaintiffs have a valid claim for a refund.  Defendants contend that many of the plaintiffs did not file a claim with the Victim Compensation and Government Claims Board as required by the California Tort Claims Act ("CTCA").  Therefore, defendants assert that these plaintiffs cannot seek a refund.

The CTCA requires that any party seeking "money or damages" from the State file a claim with the appropriate government entity.  Cal. Code § 905 (West 2005).  However, California courts have held that "the language of section 905 makes clear that the requirements for presentation of claims apply only to 'claims for money or damages' and not to claims for other forms of relief, such as specific recovery of property." Minsky v. City of Los Angeles, 11 Cal. 3d 113, 117 (1974).  In Minsky, the California Supreme Court held that in a suit for recovery of sums seized and

14

allegedly wrongfully withheld from the plaintiff, failure to file a claim with the government entity did not bar the action because it was not a suit for "money or damages." Id. at 122.  Further, California courts have held that claims brought under the doctrine of unjust enrichment do not require filing of a claim with a government entity.  Gonzales v. State of California, 68 Cal. App. 3d 621 (1977).

Plaintiffs seek a refund of fees paid pursuant to an illegal fee.  Their claim for a refund is for return of specific funds that defendants collected without proper legal authority.  As such, plaintiffs' claim is for restitution and has its foundation in the doctrine of unjust enrichment.  See Gonzales, 68 Cal. App. 3d at 627-28.  Therefore, plaintiffs have not brought a claim seeking "money or damages" and non-compliance with the claims statutes erects no bar to the instant action.

### 3.   Amount of Refund

Plaintiffs seek a refund of $72 per permit, which reflects the increase in the fee from the former $20 fee set pursuant to statute to the $92 fee which failed to comply with APA procedures.  Plaintiffs also seek prejudgment interest of seven percent pursuant to Article XV, Section 1 of the California Constitution.  Because the court has found that a refund is due to each plaintiff, the court directs defendants to refund to each plaintiff $72 per permit for each permit issued between 2003 and 2005, when the fee was set without compliance with APA

15

procedures.[8]  The court also directs defendants to include 7%

prejudgment interest in the refund paid to each plaintiff.

**D.    Attorneys' Fees**

Plaintiffs also bring a motion for attorneys' fees, arguing

that they are prevailing parties pursuant to 42 U.S.C. § 1988.

Section 1988 provides:

> In any action or proceeding to enforce a provision of .
> . . 42 U.S.C. § 1983 . . . the court, in its
> discretion, may allow the prevailing party, other than
> the United States, a reasonable attorney's fee as part
> of the costs.

42 U.S.C. § 1988 (West 2006).  Defendants argue that plaintiffs

should not be able to recover attorneys' fees because (1)

plaintiffs are not the prevailing party for purposes of § 1988;

(2) plaintiffs' APA claim and § 1983 claim do not arise from a

common nucleus of operative facts; and (3) plaintiffs' § 1983

claim is not a substantial claim.  Defendants also argue that the

amount claim is not supported by the documentation provided by

plaintiffs.  The court will address each argument in turn.

**1.    Prevailing Party**

The Supreme Court held that "[i]f the plaintiffs has

succeeded on any significant issue in the litigation which

achieved some benefit the parties sought in bringing the lawsuit,

the plaintiff has crossed the threshold to a fee award of some

kind."  <u>Texas State Teachers Assn. v. Garland Independent School</u>

---

[8]    The parties do not dispute the amount paid in total by
each plaintiff.  (RUF ¶¶ 8-9, 11-14, 16-21).  At the February 10
hearing, the parties stipulated to the amounts paid by three of
the plaintiffs which were disputed in the parties' submissions.
The parties agreed that plaintiff Viacom Outdoor, Inc. paid
defendants $858,388, plaintiff Clear Channel Outdoor, Inc. paid
defendants $429, 544, and plaintiff Acturus Outdoor Advertising,
Inc. paid defendants $7,464.

District, 489 U.S. 782, 791-92 (1989).  The plaintiff seeking

fees must obtain an enforceable judgment against the defendant

from whom fees are sought.   Gerling Global Reinsurance Corp. of

Am. v. Garamendi, 400 F.3d 803, 806 (9th Cir. 2005) (citing

Hewitt v. Helms, 482, U.S. 755, 760 (1987)).  In other words, a

plaintiff is a prevailing party for purposes of § 1988 "when

actual relief on the merits of his claim materially alters the

legal relationship between the parties by modifying the

defendant's behavior in a way that directly benefits the

plaintiff."  Id. (quoting Farrar v. Hobby, 506 U.S. 103, 111-12

(1992)).

Defendants argue that plaintiffs are not prevailing parties

because the legal relationship between plaintiffs and defendants

has not changed and any issue upon which plaintiffs prevailed is

de minimis.   These arguments are without merit.  Plaintiffs have

prevailed on their claim that the fee set and collected by

defendant is invalid for failure to comply with the APA.

Plaintiffs have been granted declaratory relief and injunctive

relief, preventing defendants from enforcing the invalid

regulation or penalizing plaintiffs for non-payment.  This relief

directly benefits plaintiffs because it prevents defendants'

ongoing collection of an invalid fee.  Plaintiffs have also been

granted a refund of the fees collected by defendants pursuant to

the void regulation.

Defendants assert that the relationship between plaintiffs

and defendants has not changed because, in the future, defendants

will impose a fee pursuant to APA procedures and will administer

its imposition and collection.  However, the legal relationship

17

between plaintiffs and defendants has changed because defendants are required to follow APA procedures in imposing the fee. Further, defendants are enjoined from imposing the invalid fee upon plaintiffs as they had done between 2003-2005.

Defendants also assert that plaintiffs prevailed on a purely procedural matter, and therefore the issue prevailed upon was only *de minimis*.  See Texas State Teachers Assn, 489 U.S. at 792 (stating that where a plaintiff prevails on a purely technical or *de minimis* issue, the "generous formulation" for a prevailing party may not be met).  While compliance with the APA is a procedural matter, plaintiffs prevailed by invalidating the fee because defendants failed to comply with the procedural requirements of the APA.  The invalidation of the fee was the core of plaintiffs' claim for relief.  This invalidation rendered declaratory relief, injunctive relief, and payment of refunds in favor of plaintiffs.  As such, plaintiffs prevailed on more than a *de minimis* matter, and are prevailing parties for the purposes of § 1988.

## 2.  Common Nucleus of Operative Facts

Plaintiffs prevailed on their APA claim, not on the § 1983 claim for violation of the First Amendment.  In the August 29, 2005 order, the court did not reach the First Amendment issue because the fee was invalidated on adequate state law grounds. In drafting § 1988, "Congress was not limited to awarding fees only when a constitutional or civil rights claim is actually decided."  Maher v. Gagne, 448 U.S. 122, 132 (1980).  Rather, § 1988 fees may be awarded " in a case in which the plaintiff prevails on a wholly statutory, non-civil-rights claims pendant

18

1  to a substantial constitutional claim." <u>Id.</u>

2          Such a fee award furthers the Congressional goal of
           encouraging suits to vindicate constitutional rights
3          without undermining the longstanding judicial policy of
           avoiding unnecessary decision of important
4          constitutional issues.

5  <u>Id.</u> at 133.

6          In order to collect fees in a case where the court declines

7  to enter judgment for the plaintiff on a claim supporting

8  attorneys' fees, plaintiff must prevail on a non-fee claim that

9  arises out of a "common nucleus of operative fact[s]."

10 <u>Garamendi</u>, 400 F.3d at 808 (citing <u>United Mine Workers v. Gibbs</u>,

11 383 U.S. 715, 725 (1966)).  Claims arise from a common nucleus of

12 operative facts where fee-supporting claims are so interrelated

13 with non-fee claims that plaintiffs would ordinarily be expected

14 to try them all in one judicial proceeding.  <u>Id.</u> (internal

15 quotations omitted).

16         All of plaintiffs' claims arose from defendants' collection

17 of permit renewal fees pursuant to an invalid fee setting

18 regulation.  Each of plaintiffs' claims sought to invalidate the

19 fee rate set by defendants, either for procedural or substantive

20 defects.  Plaintiffs correctly brought all of these claims in one

21 action.  Therefore, the non-fee claim challenging the

22 regulation's validity for failure to comply with APA procedure

23 should have been brought and was brought with the fee claim

24 challenging the regulation's validity for violation of the First

25 Amendment.  <u>See</u> <u>Garamendi</u>, 400 F.3d at 809.  As such, the non-fee

26 claim arose out of the common nucleus of operative facts

27 implicated in the § 1983 claim.

28 /////

Defendants argument that the § 1983 claim and the APA claim do not arise out of a common nucleus of operative facts is based primarily on the fact that there are two different legal theories implicated by plaintiffs' fee-claim and non-fee claim. Defendants emphasize that plaintiffs prevailed on a non-constitutional theory of recovery, not a constitutional theory. However, the common nucleus test requires only similar facts, not similar legal theories.  Further, the Supreme Court has explicitly held that § 1988 fees may be awarded to a plaintiff who "prevails on a wholly statutory, non-civil-rights claims pendant to a substantial constitutional claim."  Maher, 448 U.S. at 132.  Thus, defendants' arguments are without merit. Plaintiffs' First Amendment claim and APA claim arise out of a common nucleus of operative facts.

### 3.    Substantial First Amendment Claim

A plaintiff seeking to collect § 1988 fees on a non-fee claim must also demonstrate that the constitutional claim is substantial.  See Maher, 448 U.S. at 132 n.15; Garamendi, 400 F.3d at 808.  "A claim is constitutionally insubstantial if it is 'essentially fictitious . . . wholly insubstantial . . . obviously frivolous . . . or obviously without merit." Garamendi, 400 F.3d at 808 (quoting Hagans v. Lavine, 415 U.S. 528, 537-38 (1974)).  Constitutional claims are substantial for the purposes of attorneys' fees if they are sufficiently substantial to support federal jurisdiction.  See Hagans, 415 U.S. 528.  Application of the Hagans substantiality test does not require the court to determine whether the constitutional claims have merit.

20

1    Plaintiffs' § 1983 claim does not fail the <u>Hagans</u>

2  substantiality test.  Plaintiffs' claim is not so wholly or

3  obviously fictitious, frivolous, or without merit as to deprive

4  the court of federal jurisdiction.  <u>Hagans</u>, 415 U.S. at 537-38.

5  In this case, defendants removed this case to federal court on

6  the basis of plaintiffs' § 1983 claim.[9]  The § 1983 claim

7  remained in this action until the court granted plaintiffs'

8  motion for summary judgement and the entire dispute was settled.

9  <u>See</u> <u>Maher</u>, 448 U.S. at 131 ("[T]he constitutional issues remained

10 in the case until the entire dispute was settled by the entry of

11 a consent decree.").  Therefore, because plaintiffs'

12 constitutional claims are sufficiently substantial to support

13 federal jurisdiction, plaintiffs have met the substantiality

14 requirement to recover fees pursuant to § 1988.

15     **4.  Amount of Attorneys' Fees**

16     Plaintiffs seek attorneys' fees in the amount of

17 $347,661.50.  Defendants argue that this amount is not supported

18 by plaintiffs' documentation and that the amount claimed is not

19 reasonable.

20     In determining a reasonable attorneys' fee, courts employ

21 what is known as the "lodestar" method.  <u>See</u> <u>Morales v. City of</u>

22 <u>San Rafael</u>, 96 F.3d 359, 363-65 & nn. 8-12 (9th Cir. 1996).  The

23 "lodestar" is calculated by multiplying the number of hours the

24 prevailing party reasonably expended on the litigation by a

25 reasonable hourly rate.  <u>McGrath v. County of Nevada</u>, 67 F.3d

26

27     [9]    While not dispositive of this issue, it is somewhat
28 troubling to the court that defendants removed the case to
federal court on what it now argues is "insubstantial."

248, 252 (9th Cir. 1995).  After computing the lodestar figure, the district court assesses whether it is necessary to adjust the amount on the basis of any of the twelve <u>Kerr</u> factors which were not already taken into account.  <u>Id.</u>; <u>Kerr v. Screen Guild Extras, Inc.</u>, 526 F.2d 67, 70 (9th Cir. 1975); <u>Cunningham v. County of Los Angeles</u>, 879 F.2d 481, 487 (9th Cir. 1988).  There is a strong presumption that the lodestar figure represents a reasonable fee and "[o]nly in rare instances should the lodestar figure be adjusted on the basis of other considerations."  <u>See</u> <u>Harris v. Marhoefer</u>, 24 F.3d 16, 18 (1994); <u>Oviatt v. Pearce</u>, 954 F.2d 1470, 1482 (9th Cir. 1992).

While determining the lodestar often is difficult and imprecise, the court should provide some indication of how it arrived at its conclusions.  <u>See Domingo v. New England Fish Co.</u>, 727 F.2d 1429, 1447 (9th Cir.), *modified*, 742 F.2d 520 (9th Cir. 1984); <u>see</u> <u>also</u> <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 437 (1983)(while the district court has discretion in awarding fees, the court must provide "a concise but clear explanation of its reasons for the fee award.").

### a.  Reasonable Hours Expended

In determining the reasonable hours expended, the party seeking attorneys' fees bears the burden of submitting detailed time records which justify the hours spent working on the claims. <u>Id.</u> at 434 (district court should exclude hours not "reasonably expended").  "Where the documentation of hours is inadequate, the district court may reduce the award accordingly."  <u>Id.</u> at 433; <u>Chalmers v. City of Los Angeles</u>, 796 F.2d 1205, 1210 (9th Cir. 1986).  Here, plaintiffs provided detailed time sheets attached

22

to Terri Walter's declaration filed with this court on December 28, 2005.

In opposition, defendants contend that the number of hours expended is unreasonable.  Plaintiffs seek fees of nearly $350,000.00.  While the large amount of fees in this case can be attributed in part to complex administrative and constitutional issues, it does not justify the award sought by plaintiffs. Accordingly, the court has reduced plaintiffs' hours to reflect only those hours which the court finds were reasonable.  See infra section II(c).

### b.   Reasonable Hourly Rate

In order to decide what rate is "reasonable," courts look at "prevailing market rates in the relevant community."  Blum, 465 U.S. at 895; Davis v. City of San Francisco, 976 F.2d 1536, 1545 (9th Cir. 1992)(a reasonable hourly rate should be determined "by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity"). Determination of a reasonable hourly rate is not made merely by reference to rates actually charged by the prevailing party or rates charged in the prevailing party's locale.  See White v. City of Richmond, 713 F.2d 458, 461 (9th Cir. 1983).  Rather, the rate assessed is based on the prevailing rate in the relevant community for similar work.  Chalmers, 796 F.2d at 1211; Blum, 465 U.S. at 895 n. 11.  Generally, the relevant community is the forum in which the district court sits.  Davis v. Mason County, 927 F.2d 1473, 1488 (9th Cir. 1991).  However, rates outside the forum may be used "if local counsel was unavailable, either

23

because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case."  <u>Gates v. Deukmejian</u>, 987 F.2d 1392, 1405 (9th Cir. 1992).

Plaintiffs' calculation of attorneys' fees uses the "reasonable rate" for partners, associates, and paralegals in Southern California, where the attorneys' law firm is located. Plaintiffs have not established that this action required unique expertise that could not be obtained locally.  Thus, the court will not assess the prevailing rates of the Los Angeles and Orange County area.

The court finds that reasonable hourly rates are as follows: $300 per hour billed by a partner; $225 per hour billed by an associate; and $90 per hour billed by a paralegal or legal assistant.  These figures represent the prevailing rates for similar work in the relevant community of Sacramento in the Eastern District of California, which is the venue of this action.

**c.   Determining the "lodestar"**

The reasonable hours expended by each attorney defending the claim and the corresponding reasonable hourly rates are set forth below.  The court excluded hours allocated to duplicative research, communication, or discovery work, excessive billing, or which were otherwise unwarranted.  In this regard, based upon the court's review of the breadth and complexity of the issues involved in this litigation and upon the court's experience with the parties and the submissions by the parties in this case, the court has made the following findings regarding the reasonable

24

number of hours expended by plaintiffs on each component of the
litigation:

| Project | Submitted Hours | Reasonable Hours |
|---|---|---|
| Pre-lawsuit Work | 42.9 | NONE |
| Pleadings & Removal | 29.45 | 29.45 |
| First Amendment Research & Analysis | 74 | 50 |
| OAA Research & Analysis | 29.75 | 15 |
| APA Research & Analysis | 117.1 | 50 |
| Case Administration & Procedural Issues | 75.4 | 25 |
| Misc. Legal Research & Analysis | 122.1 | 55 |
| Client Communication | 74.75 | 25 |
| Communication with Defendants | 20.9 | 10 |
| Discovery | 47.95 | 20 |
| Motion for Partial Summary Judgment | 228.1 | 150 |
| Motion for Summary Judgment | 213.55 | 125 |
| Motion for Fees | 128 | 50 |

The court calculated the time spent on each project by each
attorney or paralegal and adjusted the number of hours performed
by each attorney and paralegal, using the same ratio.

     After adjusting the hours to take these considerations into
account, the total amount of the attorneys' fees is

$164,203.80.[10]   The following is a breakdown of this

determination:

| Attorney/ Paralegal/ | Hours | Rate | Total |
|---|---|---|---|
| MFW | 453.14 | $300 | $135,942 |
| AT | 108.77 | $225 | $24,473.25 |
| AH | 0.93 | $225 | $209.25 |
| TW | 38.67 | $90 | $3,480.30 |
| LB | 1.1 | $90 | $99 |

**Total** = $ 164,203.80

### d.   **Kerr** Factors

In Kerr v. Screen Guild Extras, Inc., 526 F.2d 67, 70 (9th

Cir. 1975), the Ninth Circuit outlined twelve factors the court

should evaluate in determining whether to adjust the Lodestar:

(1) the time and labor required, (2) the novelty and difficulty

of the questions involved, (3) the skill requisite to perform the

legal service properly, (4) the preclusion of other employment by

the attorney due to acceptance of the case, (5) the customary

fee, (6) whether the fee is fixed or contingent, (7) time

limitations imposed by the client or the circumstances, (8) the

amount involved and the results obtained, (9) the experience,

reputation, and ability of the attorneys, (10) the

"undesirability" of the case, (11) the nature and length of the

professional relationship with the client, and (12) awards in

similar cases. Id.

/////

---

[10]   Defendants have not asserted an inability to pay the
requested attorneys' fee or suggested that an award of fees would
be a hardship.

1    After evaluating the Kerr factors, the court finds that

2  plaintiffs' attorneys' fee should not be adjusted.  Accordingly,

3  the court finds that defendants' attorneys fee are properly

4  calculated at *$ 164,203.80.

5                          **CONCLUSION**

6    For the foregoing reasons, plaintiffs' motion for summary

7  judgment is GRANTED and plaintiffs' motion for attorneys' fees is

8  GRANTED.  The Clerk is instructed to close the file.

9    IT IS SO ORDERED.

10 DATED: March 6, 2006

11                              /s/ Frank C. Damrell Jr.
                                FRANK C. DAMRELL, Jr.
12                              UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28